## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| URIEL MORALES, on behalf of himself and all others similarly situated, | Civil Case No.: |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| ROBERT PALMESE; PALMCO POWER NJ, LLC; PALMCO ENERGY NJ, LLC; PALMCO POWER PA, LLC; PALMCO ENERGY PA, LLC; PALMCO POWER MD, LLC; PALMCO ENERGY MD, LLC; PALMCO POWER MA, LLC; PALMCO ENERGY MA, LLC; PALMCO POWER DE, LLC; PALMCO ENERGY DE, LLC; PALMCO POWER IL, LLC; PALMCO ENERGY IL, LLC; PALMCO POWER DC, LLC; PALMCO ENERGY DC, LLC; and PALMCO POWER VA, LLC. | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Uriel Morales ("Plaintiff" or "Mr. Morales"), by his attorneys, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, brings this proposed class action in his individual capacity, and on behalf of a class of consumers defined below, against Defendants Robert Palmese ("Mr. Palmese"); Palmco Power NJ, LLC ("Palmco Power NJ"); Palmco Energy NJ, LLC ("Palmco Energy NJ"); Palmco Power PA, LLC ("Palmco Power PA"); Palmco Energy PA, LLC ("Palmco Energy PA"); Palmco Power MD, LLC ("Palmco Power MD"); Palmco Energy MD, LLC ("Palmco Energy MD"); Palmco Power MA, LLC ("Palmco Power MA"); Palmco Energy MA, LLC ("Palmco Energy MA"); Palmco Power DE, LLC ("Palmco Power

DE"); Palmco Energy DE, LLC ("Palmco Energy DE"); Palmco Power IL, LLC ("Palmco

Power IL"); Palmco Energy IL, LLC ("Palmco Energy IL"); Palmco Power DC, LLC ("Palmco

Power DC"); Palmco Energy DC, LLC ("Palmco Energy DC"); and Palmco Power VA, LLC

("Palmco Power VA") (collectively, the "Defendants"), and hereby alleges the following with

knowledge as to his own acts, and upon information and belief, as to all other acts:

## NATURE OF THE CASE

1.      This action seeks to redress the Defendants' deceptive, unlawful, and bad faith

practices that have caused thousands of commercial and residential customers in New Jersey,

New York, Pennsylvania, Massachusetts, Delaware, Illinois, Washington, D.C., and Virginia to

be unlawfully and unknowingly enrolled in Defendants' energy supply and to pay considerably

more for their electricity and gas than they should otherwise have paid.

2.      In New Jersey and these other states, a utility company typically provides energy

supply and delivery to consumers.  Following energy deregulation, however, independent energy

supply companies ("ESCOs") can profit by supplying energy to end users.  While ESCOs

compete to supply energy, local utility companies are required by law to continue to deliver the

supply.  For customers who do not affirmatively choose an ESCO for supply, the utility

continues to provide default supply service.

3.      In order to become a consumer's energy supplier, ESCOs are required to obtain a

consumer's affirmative consent and authorization, either in writing or by phone recording, to

switch the consumer from their local utility or other ESCO.  Once an ESCO receives affirmative

consent and authorization, it send a change order (also known as a switch or enrollment order) by

mail or the wires to the local utility, who switches the consumer's energy supplier to the ESCO.

4.      Once a consumer's energy supplier is switched to an ESCO, no regulations limit the ESCOs authority to set the consumer's energy supply rate.  Typically, ESCOs are bound to set a consumer's energy supply rate by the terms of the contract between the ESCO and the consumer.

5.      Here, Palmco Energy NJ (doing business as Indra Energy) took advantage of energy deregulation to sign Plaintiff up without his authorization or consent and then overcharged him hundreds of dollars for natural gas supply.

6.      In September 2022, Plaintiff's natural gas supply was switched from his utility to Palmco Energy NJ without Plaintiff's consent or authorization.  Plaintiff never spoke to or interacted with a representative or agent from Palmco Energy NJ prior to being enrolled.

7.      In order for Plaintiff's natural gas supply to be switched, Palmco Energy NJ was required to obtain Plaintiff's affirmative consent or authorization before informing Plaintiff's utility, Elizabethtown Gas, that he should be switched to Palmco Energy NJ for supply.

8.      Palmco Energy NJ falsely and deceptively used the mails and wires to provide a change order to induces Elizabethtown Gas to switch Plaintiff's supplier, despite never requesting Plaintiff's affirmative consent or authorization and never receiving Plaintiff's affirmative consent or authorization.

9.      As a result, between September 2022 and December 2022, Palmco Energy NJ overcharged Plaintiff approximately $368 for his natural gas supply compared to what Plaintiff would have been charged by his utility.

10.     Palmco Energy NJ acts at all times under the direction and authority of Robert Palmese.  Palmco Energy NJ and Mr. Palmese do not act alone.

11.     Rather, Defendants Palmco Power NJ, Palmco Energy NJ, Palmco Power PA, Palmco Energy PA, Palmco Power MD, Palmco Energy MD, Palmco Power MA, Palmco Energy MA, Palmco Power DE, Palmco Energy DE, Palmco Power IL, Palmco Energy IL, Palmco Power DC, Palmco Energy DC, and Palmco Power VA (collectively, the "Palmco Defendants") are an enterprise comprised of a collection of independent energy service companies each owned and managed by Robert Palmese.

12.     As part of a common enterprise, the Palmco Defendants are structured in nearly identical manners: a Palmco Energy entity and a Palmco Power entity are formed in each state to offer electricity and natural gas supply, respectively.[1]  Each of the Palmco Defendants were organized by Robert Palmese and each entity maintains its principal place of business at 8751 18th Avenue, Brooklyn, NY 11214.  The manager and/or member of each of the Palmco Defendants is Robert Palmese.

13.     In each state, the Palmco Energy and Palmco Power entities use the same fictitious name, Indra Energy, as their brand name.  The Indra Energy name is trademarked and owned by the entity Palmco Mark, LLC, which was formed in New York by Robert Palmese with a principal place of business at 8751 18th Avenue, Brooklyn, NY 11214.

14.     Upon information and belief, and consistent with industry practice, the same individuals under the direction and control of Robert Palmese make marketing and pricing decisions for each of the Palmco Defendants.

15.     For years, the Palmco Defendants have been some of the most egregious ESCOs with respect to enrolling customers without their consent or authorization, a scheme known as

---

[1] While Robert Palmese formed Palmco Energy VA, LLC, in Virginia, the state of Virginia has not yet deregulated electricity supply.

"slamming."  Since 2016, at least four state attorneys general have conducted investigations of the Palmco Defendants about slamming and other egregious customer enrollment tactics, resulting in substantial settlements.[2]

16.    In response to public records requests, state authorities overseeing the energy supply industry in Illinois, Massachusetts, and the District of Columbia provided Plaintiff's counsel with more than 100 customer complaints since 2016 where consumers complained that they had been unknowingly enrolled for energy supply with the Palmco Defendants and had not authorized the enrollment.

17.    Defendants therefore either know or have reason to know that many customers are enrolled without their authorization.

18.    As a result of Defendants' unlawful acts described herein, thousands of unsuspecting consumers have been, and continue to be, fleeced by Defendants out of millions of dollars in exorbitant charges for electricity and gas.  Defendants' scheme, which often affects society's most vulnerable citizens, is immoral, unethical, oppressive, and unscrupulous.

---

[2] *Third Party Energy Suppliers Palmco Power NJ, LLC and Palmco Energy NJ, LLC Enter into $5.28 Million Settlement with the State to Resolve Allegations That They Engaged in Deceptive Sale Practices*, New Jersey Office of the Attorney General, (June 23, 2016), https://www.njoag.gov/third-party-energy-suppliers-palmco-power-nj-llc-and-palmco-energy-nj-llc-enter-into-5-28-million-settlement-with-the-state-to-resolve-allegations-that-they-engaged-in-deceptive-sale-practices/; *PUCO Adopts Settlement Agreement Regarding Retail Energy Supplier Palmco (dba Indra Energy) Marketing Practices*, Ohio Public Utilities Commission, (Jan. 29, 2020), https://puco.ohio.gov/news/puco-adopts-settlement-agreement-regarding-retail-energy-supplier-palmco; *AG Jepsen, Consumer Counsel Katz: PURA Approves $5M Settlement with Electric Supplier Palmco*, Connecticut's Official State Website, (Aug. 17, 2017), https://portal.ct.gov/AG/Press-Releases-Archived/2017-Press-Releases/AG-Jepsen-Consumer-Counsel-Katz-PURA-Approves-5M-Settlement-with-Electric-Supplier-Palmco; Memorandum *In the Matter of the Application Palmco Power DE, LLC for a Certificate to Provide Electric Supply Services Within the State of Delaware*, PSC Docket No. 16-0929 (Feb. 14, 2017).

19.     Plaintiff and other unauthorized customers of Defendants (the "Class") have been injured by Defendants' unlawful practices.  Plaintiff and the Class therefore seek damages, restitution, statutory penalties, and declaratory and injunctive relief for Defendants' racketeering in violation of 18 U.S.C. § 1962, violation of state consumer protection statutes, and unjust enrichment.

20.     Only through a class action can Defendants' customers remedy Defendants' ongoing wrongdoing.  Because the monetary damages suffered by each customer are small compared to the much higher cost a single customer would incur in trying to challenge Defendants' unlawful practices, it makes no financial sense for an individual customer to bring his or her own lawsuit.  Further, many customers do not realize they are victims of Defendants' deceptive and unlawful conduct.  With this class action, Plaintiff and the Class seek to level the playing field and make sure that Defendants engage in fair and upright business practices.

<u>**PARTIES**</u>

21.     Plaintiff resides in Elizabeth, New Jersey.

22.     As a result of Defendants' deceptive and otherwise improper and unauthorized conduct, Plaintiff incurred excessive charges for electricity and gas.

23.     Defendant Palmco Power NJ, LLC is a New Jersey limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

24.     Defendant Palmco Energy NJ, LLC is a New Jersey limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

25.     Defendant Palmco Power PA, LLC is a Pennsylvania limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

26.     Defendant Palmco Energy PA, LLC is a Pennsylvania limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

27.     Defendant Palmco Power MD, LLC is a Maryland limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

28.     Defendant Palmco Energy MD, LLC is a Maryland limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

29.     Defendant Palmco Power MA, LLC is a Massachusetts limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

30.     Defendant Palmco Energy MA, LLC is a Massachusetts limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

31.     Defendant Palmco Power DE, LLC is a Delaware limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

32.     Defendant Palmco Energy DE, LLC is a Delaware limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

33.     Defendant Palmco Power IL, LLC is an Illinois limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

34.     Defendant Palmco Energy IL, LLC is an Illinois limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

35.     Defendant Palmco Power DC, LLC is a Washington, D.C. limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

36.     Defendant Palmco Energy DC, LLC is a Washington, D.C limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

37.     Defendant Palmco Power VA, LLC is a Virginia limited liability company, with a registered business address of 8751 18th Avenue, Brooklyn, New York 11214.

38.     Upon information and belief, Defendant Robert Palmese is a citizen of New York who resides in Brooklyn, New York.  Defendant Robert Palmese is the owner and manager of Palmco Power NJ, Palmco Energy NJ, Palmco Power PA, Palmco Energy PA, Palmco Power MD, Palmco Energy MD, Palmco Power MA, Palmco Energy MA, Palmco Power DE, Palmco Energy DE, Palmco Power IL, Palmco Energy IL, Palmco Power DC, Palmco Energy DC, and Palmco Power VA, LLC.

39.     Defendants provide electricity and natural gas services to thousands of customers in New Jersey, New York, Pennsylvania, Massachusetts, Delaware, Maryland, Illinois, Washington, D.C., and Virginia.

## JURISDICTION AND VENUE

### *Subject Matter Jurisdiction*

40.     This Court has jurisdiction over the claims asserted in this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate claims of the Class exceed the sum or value of $5,000,000, the Class has more than 100 members, and diversity of citizenship exists between at least one member of the Class and Defendant.

41.     This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action involves federal questions of racketeering in violation of 18 U.S.C. § 1962.

42.     The Court has supplemental subject matter jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

*Personal Jurisdiction*

43.     This Court has general personal jurisdiction over Defendant Palmco Power NJ, LLC, because it is headquartered in New York, and thus a citizen of New York.

44.     This Court has general personal jurisdiction over Defendant Palmco Energy NJ, LLC, because it is headquartered in New York, and thus a citizen of New York.

45.     This Court has general personal jurisdiction over Defendant Palmco Power PA, LLC, because it is headquartered in New York, and thus a citizen of New York.

46.     This Court has general personal jurisdiction over Defendant Palmco Energy PA, LLC, because it is headquartered in New York, and thus a citizen of New York.

47.     This Court has general personal jurisdiction over Defendant Palmco Power MD, LLC, because it is headquartered in New York, and thus a citizen of New York.

48.     This Court has general personal jurisdiction over Defendant Palmco Energy MD, LLC, because it is headquartered in New York, and thus a citizen of New York.

49.     This Court has general personal jurisdiction over Defendant Palmco Power MA, LLC, because it is headquartered in New York, and thus a citizen of New York.

50.     This Court has general personal jurisdiction over Defendant Palmco Energy MA, LLC, because it is headquartered in New York, and thus a citizen of New York.

51.     This Court has general personal jurisdiction over Defendant Palmco Power DE, LLC, because it is headquartered in New York, and thus a citizen of New York.

52.     This Court has general personal jurisdiction over Defendant Palmco Energy DE, LLC, because it is headquartered in New York, and thus a citizen of New York.

53.     This Court has general personal jurisdiction over Defendant Palmco Power IL, LLC, because it is headquartered in New York, and thus a citizen of New York.

54.     This Court has general personal jurisdiction over Defendant Palmco Energy IL, LLC, because it is headquartered in New York, and thus a citizen of New York.

55.     This Court has general personal jurisdiction over Defendant Palmco Power DC, LLC, because it is headquartered in New York, and thus a citizen of New York.

56.     This Court has general personal jurisdiction over Defendant Palmco Energy DC, LLC, because it is headquartered in New York, and thus a citizen of New York.

57.     This Court has general personal jurisdiction over Defendant Palmco Power VA, LLC, because it is headquartered in New York, and thus a citizen of New York.

58.     Upon information and belief, this Court has general personal jurisdiction over Defendant Robert Palmese because he is a citizen of New York.

*Venue*

59.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in this District.

## FACTUAL ALLEGATIONS

*The History Of Deregulation And ESCOs' Role In Electricity Markets*

60.     In the 1990s, numerous state legislatures and state regulatory agencies, including the New York Public Service Commission ("NYPSC"), deregulated the market for retail energy supply.  As a result, the gas and electricity supply market is open to competition, and consumers and small businesses may choose their energy supplier.

61.     In the 1999, New Jersey's legislature and the New Jersey Board of Public Utilities ("NJBPU") deregulated the market for electricity and natural gas.

62.     ESCOs compete against local utilities such as Elizabethtown Gas and Consolidated Edison.  While ESCOs supply the power, the delivery of electricity to homes

remains the job of the local utilities.

63.     Consumers who do not choose to switch to an ESCO for their energy supply continue to receive their supply from their local utility.  However, if a customer switches to an ESCO, the customer will have his or her energy "supplied" by the ESCO, but still "delivered" by their existing utility.  The customer's existing utility continues to bill the customer for both the energy supply and delivery costs.  The only difference to the customer is which company sets the price for the customer's energy supply.

### Enrolling With An ESCO And Slamming

64.     In each state with a deregulated retail energy market, the local utility remains the default supplier of natural gas and electricity.

65.     In order for an ESCO to begin supplying a customer's energy, the ESCO is required to receive affirmative consent and authorization by the customer, in either written, verbal, or electronic form.  Once a customer is willing to enroll with an ESCO for electricity supply, the customer provides written, verbal, or electronic authorization of the switch.

66.     Once an ESCO receives authorization from the customer, the ESCO transmits a change order using mail or electronically wired means to the utility that supplies the customer's energy in order to change the customer's enrollment to the ESCO.

67.     The utility is thus induced to change the customer's energy supplier to the ESCO by the change order.

68.     After the ESCO becomes the customer's energy supplier, the ESCO is responsible for setting the customer's energy supply price and informs the utility of the price.

69.     Once the utility receives the price for the customer from the ESCO, the utility bills the customer for the energy supply price and remits the payment for energy supply to the

ESCO.

70.     In each state where Defendants operate, ESCOs are specifically prohibited from enrolling new customers without express authorization from the customer.  The practice of enrolling a customer without his or her authorization is known as "slamming."

71.     In New Jersey, an ESCO is required to demonstrate "that the customer has authorized the switch affirmatively and voluntarily" with: (1) "Documentation that the switch occurred pursuant to an opt-out municipal aggregation program established in accordance with N.J.A.C. 14:4-6;" (2) "An audio recording made by an independent third party or by a [Third-Party Supplier] of a customer agreeing to the switch verbally on a telephone call[;]" (3) "A signature in ink on a paper form, showing that the customer voluntarily authorized the switch[;]" or (4) "An electronic record of an internet transaction that meets the requirements at N.J.A.C. 14:4-2.5."  N.J.A.C. 14:4-2.3.

72.     In New York, "[n]o supplier of gas or electric service or any person, firm or corporation acting as such supplier's agent or representative shall on behalf of a customer make or direct any change in a supplier of gas or electric service unless such supplier, agent or representative complies with requirements to authorize and verify the change."  N.Y. Public Service Law § 65(16)(a).

73.     In Delaware, "[a]n Electric Supplier may enroll or drop a Customer by sending the appropriate electronic enrollment or drop transaction to the [Electric Distribution Company] upon the expiration of the rescission period."  26 Del. Admin Code § 3001-4.2.  Title 26 of the Delaware Administrative Code § 3001-10.5 states that "[a]n Electric Supplier shall not engage in Slamming[,]" which is defined as the "prohibited unauthorized enrollment of a Customer without the Customer's permission or the unauthorized transfer of a Customer to another Electric

Supplier."  26 Del. Admin Code § 3001-1.0.

74.     In Washington, D.C., there "are three (3) principal ways in which a Customer may enter into a Contract with an Energy Supplier: (a) Through a recorded verbal consent via telephone Solicitation; (b) Electronic Contract; or (c) Written Contract."  15 D.C.M.R. § 327.11. Each method requires proof, record, or verification of the customer's agreement.  15 D.C.M.R. §§ 327.17, 327.21, 327.23(d), 327.24.  In Washington, D.C., "[a]n Energy Supplier shall not engage in Slamming."  15 D.C.M.R. § 327.4.

75.     In Illinois, "[a]n alternative retail electric supplier shall obtain verifiable authorization from a customer, in a form or manner approved by the Commission consistent with Section 2EE of the Consumer Fraud and Deceptive Business Practices Act, before the customer is switched from another supplier."  220 ILCS 5/16-115A(b).

76.     In Maryland, "[a] supplier may not enroll a customer without the customer's consent."  COMAR 20.53.06.02, 20.53.07.05, 20.59.06.02, 20.59.07.05.

77.     In Massachusetts, "[e]ach customer choosing a generation company or its affiliate, subsidiary, or parent company, or a supplier or aggregator shall be required to affirmatively choose such entity.  It shall be unlawful for a generation company, supplier or aggregator to provide power or other service to such a customer without first obtaining said affirmative choice from the customer."  G. L. c. 164, § 1F(8)(a)(i).

78.     In Pennsylvania, only a "document signed by the customer of record whose sole purpose is to obtain the customer's consent to change [Electricity Generation Suppliers] shall be accepted as valid and result in the initiation of the customer's request."  52 Pa. Code § 57.176

79.     In Virginia, "[a] competitive service provider may enroll, or modify the services provided to, a customer only after the customer has affirmatively authorized such enrollment or

modification.  A competitive service provider shall maintain adequate records allowing it to
verify a customer's enrollment authorization."  20 VAC 5-312-80.

80.     Despite being required to obtain affirmative authorization to enroll customers in
each state in which they operate, the Palmco Defendants have routinely enrolled customers
without their consent, as evidenced by hundreds of customer complaints in multiple states and
numerous enforcement actions by states' attorneys' general.

81.     On May 23, 2016, the New Jersey Attorney General entered into a Final Consent
Judgment with Defendants Palmco Power NJ, LLC, and Palmco Energy NJ, LLC, following
allegations of numerous violations of New Jersey laws and regulations.[3]  The Consent Judgment
resolved the New Jersey Attorney General's allegations that Palmco Power NJ, LLC and Palmco
Energy NJ, LLC "switched Consumers' energy suppliers without their authorization."

82.     On January 29, 2020, the Public Utilities Commission of Ohio issued an Opinion
and Order *In the Matter of the Commission's Investigation Into Palmco Power OH, LLC, DBA
Indra Energy* and *Palmco Energy OH, LLC DBA Indra Energy's Compliance with the Ohio
Administrative Code and Potential Remedial Actions for Non-Compliance*.[4]

83.     The Public Utilities Commission of Ohio's Opinion and Order stated:

>       Staff stated that it had reviewed customer contacts from December 1, 2018,
>       to April 15, 2019, as well as PALMco's responses, and believed that
>       PALMco had engaged in misleading and deceptive practices to market and

---

[3] *Third Party Energy Suppliers Palmco Power NJ, LLC and Palmco Energy NJ, LLC Enter into
$5.28 Million Settlement with the State to Resolve Allegations That They Engaged in Deceptive
Sale Practices*, New Jersey Office of the Attorney General, (June 23, 2016),
https://www.njoag.gov/third-party-energy-suppliers-palmco-power-nj-llc-and-palmco-energy-nj-
llc-enter-into-5-28-million-settlement-with-the-state-to-resolve-allegations-that-they-engaged-in-
deceptive-sale-practices/.

[4] *PUCO Adopts Settlement Agreement Regarding Retail Energy Supplier Palmco (dba Indra
Energy) Marketing Practices*, Ohio Public Utilities Commission, (Jan. 29, 2020),
https://puco.ohio.gov/news/puco-adopts-settlement-agreement-regarding-retail-energy-supplier-
palmco.

enroll customers, as well as violating several requirements of Ohio Adm. Code Chapter 4901:1-21 and 4901:1-29.  Staff received 486 customer contacts regarding PALMco's provision of CRES and CRNGS and, of these 486 customer contacts, 373 customer contacts (approximately 76 percent) are related to complaints of high billing, billing inquiries, misleading and deceptive practices, enrollment disputes, and contract inquiries.  Further, as reported by Staff, 22 percent of supplier-related investigations open for review and resolution with Staff were complaints against PALMco as of April 15, 2019.  Staff alleged that, while PALMco committed to provide customers with "competitive" and "the best" rates, in reality, PALMco charged customers quadruple the "price to compare."

84.    In its press release on the Opinion and Order, the Public Utilities Commission of Ohio stated:

> Under the terms of the agreement, PALMco ceased enrolling new customers and will exit the Ohio marketplace when its operating authority from the PUCO expires (Feb. 14, 2020 for natural gas, and March 8, 2020 for electricity). . . . PALMco's current owners, officers, or partners are barred from doing business in Ohio's retail energy markets for five years by the terms of the agreement.[5]

85.    On August 17, 2017, the Connecticut Public Utilities Regulatory Authority announced a settlement with Palmco Power CT, LLC, which required Palmco Power CT, LLC to "relinquish its electric supplier license for a period of five years[.]"[6]  The Public Utilities Regulatory Authority found that "Palmco systematically and repeatedly deceived consumers by providing false and misleading information about the company's rates and engaged in a pattern of abusive sales tactics.  Through door-to-door marketing and telemarketing efforts, sales agents

---

[5] *Id.*

[6] *AG Jepsen, Consumer Counsel Katz: PURA Approves $5M Settlement with Electric Supplier Palmco*, Connecticut's Official State Website, (Aug. 17, 2017), https://portal.ct.gov/AG/Press-Releases-Archived/2017-Press-Releases/AG-Jepsen-Consumer-Counsel-Katz-PURA-Approves-5M-Settlement-with-Electric-Supplier-Palmco.

often switched consumers to Palmco without authorization, impersonated utility employees and falsely guaranteed savings."[7]

86.     On February 14, 2017, the Delaware Public Service Commission submitted a memorandum *In the Matter of the Application Palmco Power DE, LLC for a Certificate to Provide Electric Supply Services Within the State of Delaware*, PSC Docket No. 16-0929.  The Delaware Public Service Commission required Palmco Power DE to summarize "investigations conducted in multiple jurisdictions related to sales and the marketing practices of various affiliates of Palmco" including allegations of "deceptive pricing, 'slamming', price gouging, and the marketing and enrollment processes of Palmco."

87.     Defendants' practices of defrauding utilities by enrolling customers without their consent or authorization, which is has engaged in since at least 2016, has not ceased.

88.     In response to public records requests, the Public Service Commission of the District of Columbia provided Plaintiff's counsel with 19 customer complaints received since 2019 where consumers complained that they had been unknowingly enrolled for energy supply with the Palmco Defendants and had not authorized the enrollment.

89.     In response to public records requests, the Illinois Commerce Commission provided Plaintiff's counsel with 74 customer complaints received since 2016 where consumers complained that they had been unknowingly enrolled for energy supply with the Palmco Defendants and had not authorized the enrollment.

90.     In response to public records requests, the Massachusetts Department of Public Utilities provided Plaintiff's counsel with 8 customer complaints received between 2017 and 2019

---

[7] *Id.*

where consumers complained that they had been unknowingly enrolled for energy supply with the Palmco Defendants and had not authorized the enrollment.

91.     Defendants know that they do not have switch authorization when they submit false change orders.  After all, Defendant must be in possession of a valid authorization to submit a change order, and therefore when Defendants submit false change orders they know they have no authorization to do so because they are not in possession of valid authorizations.

### Plaintiff's Dealings with Palmco Energy NJ

92.     In September 2022, Palmco Energy NJ began supplying Plaintiff's natural gas supply.

93.     Plaintiff has no recollection of ever speaking with or being contacted by Palmco Energy NJ or any of its representatives or agents prior to September 2022.  Plaintiff never received a notification, welcome letter, contract, or letter about receiving natural gas supply from Palmco Energy NJ.

94.     Upon information and belief, Palmco Energy NJ transmitted a change order to Elizabethtown Gas to switch Plaintiff's natural gas supply to Palmco Energy NJ, despite never requesting Plaintiff's affirmative consent or authorization and never receiving Plaintiff's affirmative consent or authorization.

95.     Palmco Energy NJ continued to supply Plaintiff's natural gas until January 2023.

96.     During January 2023, Plaintiff discovered that Palmco Energy NJ was supplying his natural gas and setting egregious natural gas supply rates, resulting in a natural gas supply rate that increased eight-fold within four months.  Following this discovery, Plaintiff contacted Palmco Energy NJ and requested that it cancel his service.  During this conversation, Palmco Energy NJ offered Plaintiff a 12-month contract with Palmco Energy NJ, but Plaintiff declined.

97. On February 13, 2023, pursuant to New Jersey Administrative Code § 14:4-2.7, counsel for Plaintiff sent electronic and hard-copy letters to Palmco Energy NJ requesting documentation or record that Palmco Energy NJ received Plaintiff's authorization prior to enrolling Plaintiff. [8] Less than four hours after Plaintiff's counsel sent these letters, Plaintiff received a call from a Palmco Energy NJ representative offering Plaintiff $543 on the condition that Plaintiff agree to sign a settlement agreement. Plaintiff declined this offer.

98. Neither Plaintiff nor Plaintiff's counsel have received any documentation or record of authorization by Plaintiff to be enrolled in natural gas supply with Palmco Energy NJ.

99. Palmco Energy NJ has not responded to either letter from Plaintiff's counsel.

100. Between February 13, 2023, and March 1, 2023, Palmco Energy NJ mailed Plaintiff a check for $543 without any explanation, letter, or agreement. Plaintiff has not cashed this check.

101. The following table compares Plaintiff's gas supply rates from Palmco Energy NJ for 4 billing periods to his local utility Elizabethtown Gas' contemporaneous supply rate to show what Plaintiff would have been charged had Palmco Energy NJ not unlawfully switched his natural gas supply.

---

[8] Pursuant to New Jersey Administrative Code § 14:4-2.7(f), Palmco Energy NJ LLC is required to produce any and all documentation and record of a customer's enrollment within ten business days of a request by the customer.

| Billing Period | Palmco Energy NJ's Charge (Dollars) | Elizabethtown Gas' Charge (Dollars) | Overcharge |
|---|---|---|---|
| 9/15/2022 – 10/14/2022 | $13.35 | $15.87 | -$2.53 |
| 10/14/2022 - 11/12/2022 | $47.63 | $27.49 | $20.15 |
| 11/12/2022 - 12/13/2022 | $162.06 | $40.07 | $121.99 |
| 12/13/2022 – 1/18/2023 | $289.08 | $62.42 | $226.66 |

102.    The table demonstrates that Palmco Energy NJ repeatedly charged Plaintiff far more than he would have been charged had he remained with Elizabethtown Gas.

103.    Defendants enroll consumers into purchasing their energy supply without the authorization of consumers.  Defendants do so to reap excessive profits at the expense of unsuspecting consumers.  Defendants acted with actual malice, or wanton and willful disregard, for consumers' well-being.

104.    In this case, Palmco Energy NJ knew that once it had improperly acquired a consumer's energy account, it could charge high energy rates and many consumers (if not most) would not know, and simply pay the exorbitant charges, month after month.

105.    It is well-established that defaults are powerful drivers of consumer behavior.  There are various factors underlying this human tendency that have been discussed in the judgment and decision-making literature, such as the work about defaults, the "status quo bias,"[9] and "Nudges."[10]

---

[9] Daniel Kahneman, Jack L. Knetsch and Richard H. Thaler (1991), "Endowment Effect, Loss Aversion, and Status Quo Bias," *The Journal of Economic Perspectives*, Vol. 5, pp. 193–206.

[10] R. Thaler and S. Sunstein (2008), *Nudge*, Yale University Press.

106.    Given that Defendants have engaged in a series of deceptive acts and omissions for which it billed consumers and consumers continued to pay, the continuing violation doctrine applies, effectively tolling the limitations period until the date of Defendants' last wrongful act against Plaintiff and the Class.

## Rule 9(b) Allegations

107.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

108.    WHO, WHAT, and HOW:  Defendants make material misrepresentations and omissions of fact using the mails and wires by sending change orders to a customer's utility falsely representing that the customer authorized enrollment for energy supply with Defendants when Defendants knew that the authorization did not comply with the respective statute or regulation for enrollment and the customer did not authorize enrollment with Defendants.  Once the utility switches the customer's supplier to Defendants, Defendants received payment for the customer's energy supply through the mails and wires.

109.    WHEN and WHERE:  Palmco Energy NJ made the misrepresentation to Elizabethtown Gas on or about August or September 2022 when it submitted a false change order for Plaintiff's energy supply.  Upon knowledge and belief, Defendants make the same or substantially similar misrepresentations and omissions of material facts to the respective utilities of each of its unauthorized customers in New Jersey, New York, Massachusetts, Pennsylvania, Maryland, Illinois, Washington, D.C., and Virginia, when it submits false change orders to switch a customer's energy supply.

110.    WHY:  Knowing that a customer is required to provide authorization to enroll with Defendants in a method that complies with the respective statute or regulation, Defendants submit false authorizations without a customer's consent to enroll the customer.  By fraudulently inducing customers to switch to its energy supply, Defendants have successfully reaped millions in profits at the expense of its unsuspecting customers.

## CLASS ACTION ALLEGATIONS

111.    Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23(a), (b)(2), (3), and (4) of the Federal Rules of Civil Procedure, on behalf of a class of all of Defendants' customers in the United States who were enrolled with Defendants without authorization between 2017 and the date of judgment (the "Nationwide Class").

112.    Plaintiff brings this action on his own behalf and additionally, pursuant to Rule 23(a), (b)(2) and (3) of the Federal Rules of Civil Procedure, on behalf of a class of all of Palmco Energy NJ and Palmco Power NJ customers in New Jersey who were enrolled with Palmco Energy NJ and Palmco Power NJ without authorization between 2017 and the date of judgment (the "New Jersey Subclass").

113.    As alleged throughout this Complaint, the Classes' claims all derive directly from a single course of conduct by Defendants.  Defendants have engaged in uniform and standardized conduct toward the Classes—their marketing, enrollment, and billing practices— and this case is about the responsibility of Defendants for their knowledge and conduct in deceiving utilities and injuring consumers.  This conduct did not meaningfully differentiate among individual Class members in its degree of care or candor, its actions or inactions, or in its omissions.  Upon information and belief, Defendants' practice of enrolling customers without authorization or consent are materially the same.

114.    Excluded from the Class are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; and any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants.

115.    Plaintiff reserves the right, as might be necessary or appropriate, to modify or amend the definition of the Classes and/or add additional Subclasses, when Plaintiff files his motion for class certification.

116.    Plaintiff does not know the exact size of the Classes because such information is in the exclusive control of Defendants.  Plaintiff believes, however, that based on the publicly available data concerning Defendants' customers in New Jersey, New York, Pennsylvania, Massachusetts, Delaware, Maryland, Illinois, Washington, D.C., and Virginia, the Classes encompass at least thousands of individuals whose identities can be readily ascertained from Defendants' records.  Accordingly, the members of the Classes are so numerous that joinder of all such persons is impracticable.

117.    Questions of law and fact are common to the Classes and predominate over any questions affecting only individual Class Members, and a class action will generate common answers to the questions below, which are apt to drive the resolution of this action:

a.   Whether Defendants enrolled customers without authorization;

b.   Whether Defendants operated in violation of 18 U.S.C. § 1962;

c.   Whether Defendants' conduct violates N.J.S.A. 56: 8-1 *et seq.*;

d.   Whether Defendants' conduct violates multiple state consumer protection statutes;

e.   Whether Defendants were unjustly enriched as a result of its conduct;

f.   Whether Class Members have been injured by Defendants' conduct;

g.   Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices; and

h.   The extent of class-wide injury and the measure of damages for those injuries.

118.   Plaintiff's claims are typical of the claims of the Class and there is no conflict with the interests of any other members of the Class.  Plaintiff and the other members of the Class were subject to the same or similar conduct engineered by the Defendants.  Further, Plaintiff and members of the Classes sustained substantially the same injuries and damages arising out of Defendants' conduct.

119.   Plaintiff is an adequate class representative.  Plaintiff will fairly and adequately protect the interests of all Class Members.  Plaintiff has retained competent and experienced class action attorneys to represent his interests and those of the Classes.

120.   A class action is necessary because i) the prosecution of separate actions by Class Members will create a risk of adjudications with respect to individual Class Members that will, as a practical matter, be dispositive of the interests of the other Class Members not parties to this action, or substantially impair or impede their ability to protect their interests; and ii) the prosecution of separate actions by Class Members will create a risk of inconsistent or varying adjudications with respect to individual Class Members, which will establish incompatible standards for Defendants' conduct.

121.   A class action is appropriate because Defendants have acted or refused to act on grounds generally applicable to all Class Members.

122.   A class action is superior to all other available methods for resolving this controversy because questions of law and fact common to the Class predominate over any

questions affecting only individual Class Members and a class action will fairly and efficiently adjudicate the controversy.

123.    Further, the following issues are also appropriately resolved on a class-wide basis under Federal Rule of Civil Procedure 23(c)(4):

    a.  Whether Defendants enrolled customers without authorization;

    b.  Whether Defendants operated in violation of 18 U.S.C. § 1962;

    c.  Whether Defendants' conduct violates N.J.S.A. 56: 8-1 *et seq.*;

    d.  Whether Defendant's conduct violates multiple state consumer protection statutes;

    e.  Whether Defendant was unjustly enriched as a result of its conduct;

    f.  Whether Class Members have been injured by Defendants' conduct; and

    g.  Whether, and to what extent, equitable relief should be imposed on Defendants to prevent them from continuing their unlawful practices.

124.    Accordingly, this action satisfies the requirements set forth under Federal Rule of Civil Procedure 23(a), 23(b), and 23(c)(4).

## CAUSES OF ACTION

### COUNT I
### Racketeering In Violation of 18 U.S.C. § 1962
### (On Behalf Of Plaintiff And The Classes)

125.    Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

126.    18 U.S.C. § 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

127.    Each of the Defendants, at all relevant times, is and has been a "person" within the definition of 18 U.S.C. § 1961(3) because each defendant is an "individual or entity capable of holding a legal or beneficial interest in property."  18 U.S.C. § 1961(3).

128.    Defendants comprise an association, associations, and/or are an associated-in-fact enterprise (the "Enterprise").  Robert Palmese, as a manager and member of each of Palmco Defendants, operated, managed, and controlled each of the Palmco Defendants.

129.    The Palmco Defendants are structured in nearly identical manners: a Palmco Energy entity and a Palmco Power entity are organized in each state to offer electricity and natural gas supply, respectivly.  Each of the Palmco Defendants were organized by Robert Palmese and each entity maintains its principal place of business at 8751 18th Avenue, Brooklyn, NY 11214.  The sole manager and/or member of each of the Palmco Defendants is Robert Palmese.

130.    In each state, the Palmco Energy and Palmco Power entities use the fictitious name, Indra Energy, as their brand name.  The Indra Energy name is trademarked and owned by the entity Palmco Mark, LLC, which is organized in New York by Robert Palmese with a principal place of business at 8751 18th Avenue, Brooklyn, NY 11214.

131.    Upon information and belief, the same individuals operating under the control of Mr. Palmese and the Palmco Defendants, make marketing and pricing decisions for each of the Palmco Defendants.

132.    Each of the Palmco Defendants operate independently, receive independent payments and benefits from the unauthorized and illegal enrollment of customers, and affirmatively use their separate corporate status to further the illegal goals of the Enterprise.

133.     Mr. Palmese and the Palmco Defendants conduct the Enterprise's affairs through a pattern of racketeering activity.  The Enterprise has an existence beyond that which is merely necessary to commit predicate acts.  It oversaw and coordinated the commission of numerous predicate acts on an ongoing basis in furtherance of the scheme and efforts to conceal the scheme, each of which caused direct injury to Plaintiff and the Class.

134.     The conduct, acts, and omissions of Defendants set forth above were an integral part of the overall pattern and practices described herein, including using the facilities of United States interstate commerce to reap vast profits from the scheme to defraud and misrepresent the existence of customer authorizations, thereby causing enormous harm to Plaintiff and the Class.

135.     Defendants offer energy supply services in eight states and are engaged in providing energy supply across state lines to supply their customers with energy.

136.     Through the conduct and the acts and omissions set forth above, Defendants knowingly, intentionally, and recklessly:

      a.  used the mails in United States to commit frauds in violation of 18 U.S.C. § 1341, which is incorporated as a "racketeering activity" under 18 U.S.C. § 1961(1), directly injuring Plaintiff and the Class; and

      b.  used the wires in United States to commit frauds in violation of 18 U.S.C. § 1343, which is incorporated as a "racketeering activity" under 18 U.S.C. § 1961(1), directly injuring Plaintiff and the Class.

137.     The Enterprise enrolled Plaintiff and members of the Class without their authorization and submitted false proofs of authorization to the respective utilities to enroll Plaintiff and members of the Class in order to receive payment from Plaintiff and members of the Class through the wires and mails.

138. The Enterprise submitted false and misleading change orders to the respective utilities with the intent that the respective utilities would rely upon the proofs of authorization to enroll Plaintiff and the Class with the Palmco Defendants as energy suppliers.

139. The Enterprise knowingly submitted false and misleading change orders to the respective utilities with the intent that Plaintiff and the Class would be enrolled with the Palmco Defendants for energy supply and Plaintiff and the Class would submit payment for energy supply to be received by Palmco Defendants.

140. All Defendants either knew or had reason that the misleading change orders submitted to the respective utilities were false. They had reason to know that the Palmco Defendants had received numerous complaints from customers who had been enrolled without their authorization since at least 2016 and that the Palmco Defendants had been investigated by multiple states attorneys general regarding improper enrollment of customers without sufficient authorization. They also know that they did not have authorizations to submit the change orders when they were submitted.

141. All Defendants knew that the respective utilities had no reason to dispute the change orders that the Palmco Defendants submitted.

142. Without the Enterprise submitting false proofs of authorization to the respective utilities to enroll Plaintiff and the Class, Plaintiff and the Class would not have been enrolled with the Palmco Defendants and would not have submitted payment for energy supply to be received by the Palmco Defendants.

143. Mr. Palmese and the Palmco Defendants were enabled to commit slamming using mail and wire fraud because their positions in the enterprise gave them the ability to submit false change orders and collect payments from customers so obtained, they were involved in and

controlled the enterprise's ability to engage in slamming, and because slamming is related to the activities of the enterprise (to wit, the fraudulent acquisition of customers).

144.    The Enterprise engaged in numerous acts of racketeering and therefore constitute a pattern within the meaning of 18 U.S.C. § 1961(5).  As set forth herein, this pattern consisted of the repeated, continuous acts that had the same or similar purpose, result, participants, victims or methods.  There is every reason to believe that these racketeering acts will continue in the future.

145.    It was the purpose of the Enterprise to enrich themselves through a scheme to defraud and induce the utilities to change Plaintiff and the Class' natural gas and electricity supplier to Defendants to receive payment from Plaintiff and the Class for energy supply.

146.    The Enterprise has been implementing this scheme since at least 2016.

147.    Nevertheless, Defendants continued and will continue to enroll consumers in their electricity and natural gas supply without authorization.

148.    Defendants repeatedly enroll consumers without their authorization, charge consumers for natural gas and electricity supply, receive payment from consumers using the wires and the mails, and use this payment to operate Defendants' businesses.   Plaintiff and class members are injured because Defendant's supply rates are substantially higher than the default utility supply rate.

149.    Pursuant to and in furtherance of this scheme, Defendants committed multiple related acts of mail fraud and wire fraud by engaging in the following acts between 2016 to the present:

        a.  Misrepresenting to a customer's utility that Defendants received a valid authorization to switch the customer's energy supplier to Defendants;

b.  Submitting a false change order to a customer's utility that was not the product of a valid authorization by the customer;

c.  Enrolling a customer with Defendants despite knowing that the customer did not authorize enrollment with Defendants;

d.  Directing the utility each month to set the customer's energy supply price consistent with Defendants' energy supply price without receiving authorization to enroll the customer with Defendants;

e.  Accepting payment from the utility each month for a customer's energy supply despite not receiving authorization to enroll the customer; and

f.  Using and investing income that was received from a utility for a customer's energy supply who did not authorize enrollment with Defendants.

150.    Beginning no later than 2016, in furtherance of and for the purpose of executing and attempting to execute the described scheme and artifices to defraud, each of the Defendants, on numerous occasions, used and caused to be used mail and wire communications in interstate and foreign commerce and the U.S. mails, by both making and causing to be made wire communications and mailings.  These wire communications and mailings were made, *inter alia*, for the purposes of: (i) communicating with a customer's respective utility that the customer had authorized enrollment with Defendants, despite Defendants not receiving a valid authorization from a customer; (ii) communicating with the utilities to set a price for a customer's energy supply; and (iii) receiving monies through the mails and wires for energy supply.  Such actions constitute fraudulent wire and mail communications in violation of 18 U.S.C. § 1961(1), 18 U.S.C. § 1341, and 18 U.S.C. § 1343, and caused direct injury to Plaintiff and the Classes.

151.     The repeated violations by Defendants set forth herein extended over a period of years and involved distinct and independent acts.  These acts were related to each other by virtue of (a) common participants; (b) common types of victims; and (c) the common purpose and common result from the concerted misrepresentation of receiving valid authorizations and receiving monies for energy supply on behalf of customers who did not authorize Defendants' to be the customer's energy supplier.

152.     Each of the Defendants were active participants in the Enterprise and all of them knowingly and intentionally violated or aided violations of 18 U.S.C. § 1962(c), by directly or indirectly conducting or participating in the conduct of the affairs of the Enterprise through a pattern of racketeering activity.  Each of the Defendants know that the Enterprise is engaged in unauthorized enrollment and they could easily ensure that such enrollments do not occur but they actively avoid doing so.

153.     Defendants' motive in directing and operating the Enterprise was to fraudulently enrich themselves at customers' expense.

154.     As a direct and proximate consequence of the Defendants' conduct alleged herein, Plaintiff and the Class have been injured in their property, causing damages in an amount to be determined at trial.

155.     Because of Defendants' violations of 18 U.S.C. § 1962(c), Defendants are jointly and severally liable to Plaintiff and Class Members for damages in the amount of three times the damages sustained by Plaintiff and the Class, in addition to the cost of this lawsuit, including reasonable attorneys' fees, pursuant to 18 U.S.C. § 1964.

## COUNT II
**Violation Of The New Jersey Consumer Fraud Act
(On Behalf Of Plaintiff And The New Jersey Subclass
Against Defendants Robert Palmese, Palmco Energy NJ, and Palmco Power NJ)**

156.     Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

157.     The Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

158.     The Energy Anti-Slamming regulations state that, in order for an ESCO or "Third-Party Supplier" to effectuate a "change order" of a customer's energy supplier, the ESCO "shall demonstrate . . . that the customer has authorized the switch affirmatively and voluntarily." N.J.A.C. § 14:4-2.3(b).

159.     Defendants Palmco Energy NJ and Palmco Power NJ are required to verify authorization of a change order through (1) an "audio recording made by an independent third party or by a TPS of a customer agreeing to switch verbally on a telephone call[;]" (2) a "signature in ink on a paper form, showing that the customer voluntarily authorized the switch[;]" or (3) an "electronic record of an internet transaction that meets the requirements at N.J.A.C. 14:4-2.5." N.J.A.C. § 14:4-2.3(c).

160.     Defendants engaged in an unconscionable and unfair practices by mispresenting to the New Jersey Subclass' respective utilities that Defendants received authorization from Plaintiff and the New Jersey Subclass to enroll with Defendants with the intent that the respective utilities would enroll Plaintiff and the New Jersey Subclass with Defendants.

161.    Defendants' misrepresentations and false, deceptive, and misleading statements with respect to whether a customer provided affirmative and voluntary authorization for a change order constitute affirmative misrepresentations in connection with the marketing, advertising, promotion, and sale of electricity and/or natural gas in violation of the Consumer Fraud Act.

162.    Defendants made these false, deceptive, and misleading statements and omissions with the intent that the customer's utility relies upon such statements.

163.    Plaintiff and the other members of the New Jersey Subclass suffered ascertainable loss as a direct and proximate result of Defendants' actions in violation of the Consumer Fraud Act.

164.    Slamming is an unfair and unconscionable commercial practice that is against public policy and that relies on false pretense.

165.    As a consequence of Defendants' wrongful actions, Plaintiff and the other members of the New Jersey Subclass suffered an ascertainable monetary loss based on the difference in the rate they were charged versus the rate they would have been charged had they remained with their utility or default provider.

166.    Plaintiff and other members of the New Jersey Subclass suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have been switched to Defendants' energy supply without Defendants' misrepresentations and omissions.

167.    By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

168.    Defendants know full well that they switched customers without authorization for the sole purpose of charging customers for energy so they can reap outrageous profits to the

direct detriment of New Jersey consumers and without regard to the consequences high utility bills cause such consumers.  Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the life, health, safety, and well-being of Plaintiff and the other members of the Class.  Defendants are therefore additionally liable for punitive damages, in an amount to be determined at trial.

## COUNT III
**Violation Of Materially Identical State Consumer Protection Statutes**
**(On Behalf Of Plaintiff And The Class)**

169.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

170.    Pursuant to the materially identical consumer protection statutes of New Jersey, Pennsylvania, Ohio, Maryland, Washington DC, and Illinois, consumers are protected against deceptive acts or practices, misrepresentations, or omissions which affect business, trade, or commerce.

171.    Defendants violated the following materially identical statutes:

a.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-2;

b.  New York General Business Law § 349, 349-d;

c.  Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4);

d.  Massachusetts Consumer Protection Act, G L.c. 93A;

e.  Virginia Consumer Protection Act, § 59.1-200;

f.  Delaware Consumer Fraud Act, 6 Del. C § 2513;

g.  Maryland Consumer Protection Act, Md. Commercial Law Code Ann. § 13-303, *et seq.*;

    h.   District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3904, *et seq.*; and

    i.   Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILCS § 505/2.

172.    Plaintiff brings this claim on his own behalf and on behalf of each member of the Class.

173.    Defendants' enrollment, marketing, and billing practices are consumer-oriented in that they are directed at members of the consuming public.

174.    Defendants have engaged in, and continue to engage in, deceptive acts and practices, including:

    a.   Misrepresenting that Defendants received affirmative and voluntary authorization to switch customer's energy supply;

    b.   Failing to adequately disclose that Defendants did not receive authorization by its customers to receive energy supply from Defendants; and

    c.   Receiving payment for a customer's energy supply despite not obtaining valid authorization to enroll a customer.

175.    The above unfair and deceptive practices and acts by Defendants were material omissions of existing or past facts.

176.    Defendants knew or believed that the above unfair and deceptive practices and acts were material omissions.

177.    The aforementioned acts are continuing, unconscionable, and deceptive and are contrary to each state's public policy, which aims to protect consumers.

178.    Defendants' false, deceptive, and misleading statements and omissions were material to enrolling a potential customer with Defendants.

179.     Defendants knew at the time they submitted authorization to switch Plaintiff and prospective customers to Defendants' energy supply that Defendants did not obtain authorization to enroll Plaintiff and prospective customers.

180.     Defendants knew at the time they submitted authorization to switch Plaintiff and prospective customers to Defendants' energy supply that Plaintiff and prospective customers that customers could only be enrolled with Defendants with valid authorization.

181.     Defendants knew at the time they submitted authorization to switch Plaintiff and prospective customers to Defendants' energy supply that Plaintiff and prospective customers would pay Defendants for energy supply, despite not authorizing Defendants to supply Plaintiff and prospective customers' energy.

182.     Defendants' misrepresentations and omissions that they did not receive authorization from Plaintiff and prospective customers is material to the utility switching customers' enrollment to Defendants.

183.     Defendants' intentional concealments were designed to deceive the utilities and into believing Defendants were authorized to enroll Plaintiff and prospective customers and were designed to charge Plaintiff and prospective customers for an energy supply service which they did not authorize.

184.     Defendants' practices are unconscionable and outside the norm of reasonable business practices.

185.     As a direct and proximate result of Defendants' unlawful deceptive acts and practices, Plaintiff and Class Members paid Defendants for energy supply and suffered and continue to suffer an ascertainable loss of monies based on the difference in the rate they were charged versus the rate they would have been charged by their respective utility, which is the rate

Plaintiff and Class Members would have received had Defendants not deceptively enrolled Plaintiff and Class Members.  By reason of the foregoing, Defendants are liable to Plaintiff and Class Members for statutory, compensatory, and punitive damages, attorneys' fees, and the costs of this suit.

186.    Plaintiffs and the members of the Class further seek equitable relief against Defendants.  This Court has the power to award such relief, including but not limited to, an order declaring Defendants' practices to be unlawful, an order enjoining Defendants from engaging in any further unlawful conduct, and an order directing Defendants to return to Plaintiff and the Class all amounts wrongfully assessed and/or collected.

187.    As a result of Defendants' deceptive acts or practices, Plaintiff and Class Members suffered actual damages in an amount to be determined at trial, and are entitled to their damages, costs, and reasonable attorneys' fees and all other relief available under each state's respective consumer protection statute.

**COUNT IV**
**Unjust Enrichment**
**(On Behalf Of Plaintiff And The Class)**

188.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

189.    Plaintiff and the Class Members conferred a tangible economic benefit upon Defendants by paying Defendants for supply of electricity or gas.  Plaintiff and Class Members did not authorize enrollment with Defendants.

190.    Plaintiff and the Class Members did not knowingly sign up for energy supply with Defendants.

191.    By engaging in the conduct described above, Defendants have unjustly enriched themselves and received a benefit that was not contemplated by and is at the expense of Plaintiff and Class Members.

192.    It would be unjust and inequitable for Defendants to retain the payments Plaintiff and Class Members made for excessive energy charges.

193.    Therefore, Defendants are liable to Plaintiff and Class Members for the damages that they have suffered as a result of Defendants' actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

(a)    Issue an order certifying the Classes defined above, appointing Plaintiff as Class Representative, and designating the undersigned firm as Class Counsel;

(b)    Find and declare that Defendants have committed the violations of law alleged herein;

(c)    Render an award of compensatory and statutory damages, the precise amount of which is to be determined at trial;

(d)    Issue an injunction or other appropriate equitable relief requiring Defendants to refrain from engaging in the deceptive practices alleged herein;

(e)    Render an award of punitive damages;

(f)    Enter judgment including interest, costs, reasonable attorneys' fees, costs, and expenses; and

(g)    Grant all such other relief as the Court deems appropriate.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38, Plaintiff demands that a jury determine any issue triable of right.

Dated: May 16, 2023
White Plains, New York

**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**

By:     */s/ D. Greg Blankinship*
        D. Greg Blankinship
        One North Broadway, Suite 900
        White Plains, New York 10601
        Telephone: (914) 298-3281
        gblankinship@fbfglaw.com

        *Attorneys for Plaintiffs and the Proposed Class*