# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **URIEL MORALES**, on behalf of himself and all others similarly situated, | Case No. 1:23-cv-03649 (DLI) (PK) |
| Plaintiff, | |
| v. | |
| **ROBERT PALMESE; PALMCO POWER NJ, LLC; PALMCO ENERGY NJ, LLC; PALMCO POWER PA, LLC; PALMCO ENERGY PA, LLC; PALMCO POWER MD, LLC; PALMCO ENERGY MD, LLC; PALMCO POWER MA, LLC; PALMCO ENERGY MA, LLC; PALMCO POWER DE, LLC; PALMCO ENERGY DE, LLC; PALMCO POWER IL, LLC; PALMCO ENERGY IL, LLC; PALMCO POWER DC, LLC; PALMCO ENERGY DC, LLC; AND PALMCO POWER VA, LLC.** | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, <u>OR IN THE ALTERNATIVE, MOTION TO STRIKE CLASS CLAIMS</u>

Dated:  November 16, 2023

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

DEFENDANTS ARE ATTEMPTING TO EVADE PAGE LIMITS ........................... 5

ARGUMENT .............................................................................................................. 6

I.    LEGAL STANDARD.................................................................................... 6

II.   PLAINTIFF HAS ALLEGED CIVIL RICO
CLAIMS UNDER SECTIONS 1964(c) AND 1964(d).................................. 6

    A.    Plaintiff Has Alleged A RICO Enterprise.......................................... 6

        1.    The Named Defendants Form A RICO Enterprise. ................... 7

        2.    The Third Party Sales Companies Participated In The Enterprise. ........... 9

        3.    The Alleged Enterprise Is Distinct From The Palmco Entities................ 11

    B.    Plaintiff Adequately Alleges A Pattern Of Racketeering Activity. ................... 14

        1.    Rule 9(b) Is Inapplicable Where Mails
And Wires Are Sent In Furtherance Of A
Fraudulent Scheme, But Do No Contain Any False Statements. ............ 14

        2.    The Complaint Alleges Facts From Which
Defendant's Knowledge And Intent Can Be Inferred............................. 17

        3.    All Of The Palmco Entities Are Proper Defendants................................ 20

        4.    Mr. Palmese Oversaw The Enterprise. ................................................... 20

        5.    Plaintiff Has Alleged Continuity. ........................................................... 21

            a.    Open-Ended Continuity. .............................................................. 21

            b.    Closed-Ended Continuity.............................................................. 23

    C.    Plaintiff Has Adequately Alleged
A RICO Conspiracy Under 18 U.S.C. § 1964(d). .............................. 24

III.  THE COURT SHOULD NOT DISMISS PLAINTIFF'S STATE LAW CLAIMS... 25

    A.    Plaintiff Can Represent A Multi-State Class. .................................... 25

    B.    Plaintiff Adequately Plead Consumer Protection Claims..................... 25

    C.    Plaintiff Adequately Pleads An Unjust Enrichment Claim................... 29

IV.  THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE. ............. 31

    A.    Common Claims Predominate. .......................................................... 32

    B.    The Class Is Easily Ascertainable...................................................... 34

    C.    An Injunctive Relief Class Can Be Certified...................................... 35

CONCLUSION .......................................................................................................... 35

## **TABLE OF AUTHORITIES**

**Cases**                                                                 **Page(s)**

*AFSCME v. Cephalon, Inc. (In re Actiq Sales & Mktg. Practices Litig.),*
    790 F. Supp. 2d 313 (E.D. Pa. 2011) ........................................................ 29

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.,*
    No. 04-2934, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) ........................ 14, 16

*Allianz Glob. Inv'rs GMBH v. Bank of Am. Corp.,*
    463 F. Supp. 3d 409 (S.D.N.Y. 2020) ...................................................... 29

*Allstate Ins. Co. v. Ahmed Halima,*
    No. 06-1316, 2009 U.S. Dist. LEXIS 22443 (E.D.N.Y. Mar. 19, 2009) ........................ 6, 24

*Angermeir v. Cohen,*
    14 F. Supp. 3d 134 (S.D.N.Y. 2014) ........................................................ 3, 14

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................ 6

*Avritt v. Reliastar Life Ins. Co.,*
    615 F.3d 1023 (8th Cir. 2020) ............................................................... 33

*Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo,*
    346 F. Supp. 3d 432 (S.D.N.Y. 2018) ....................................................... 12-13

*Black v. Ganieva,*
    No. 21-8824, 2022 U.S. Dist. LEXIS 116255 (S.D.N.Y. June 30, 2022) ........................ 11

*Blessing v. Sirius XM Radio Inc.,*
    No. 09-10035, 2011 U.S. Dist. LEXIS 32791 (S.D.N.Y. Mar. 29, 2011) ........................ 34

*Blue Cross v. Smithkline Beecham Clinical Labs., Inc.,*
    108 F. Supp. 2d 84 (D. Conn. 1999) ........................................................ 9

*Boyle v. United States,*
    556 U.S. 938 (2009) ........................................................................ 6, 8

*Brady v. Anker Innovations Ltd.,*
    No. 18-11396, 2020 U.S. Dist. LEXIS 5672 (S.D.N.Y. Jan. 13, 2020) ......................... 27

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan,*
    No. 07-1471, 2009 U.S. Dist. LEXIS 28880 (E.D.N.Y. Mar. 31, 2009) ......................... 19

*Candelaria v. Conopco, Inc.,*
    No. 21-6760, 2023 U.S. Dist. LEXIS 33180 (E.D.N.Y. Feb. 28, 2023) .................. 31, 32, 35

*Carr v. Johnson & Johnson Consumer Inc.,*
    No. 21-6557, 2023 U.S. Dist. LEXIS 86691 (E.D.N.Y. May 17, 2023) ......................... 32

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001) ........................................................................................... 12

*Chiropractic v. Encompass Ins. Co. of Am.*,
    No. 10-8159, 2013 U.S. Dist. LEXIS 43972 (N.D. Ill. Mar. 28, 2013) ................................. 11

*City of N.Y. v. Old Dominion Tobacco Co., Inc.*,
    No. 20-5965, 2023 U.S. Dist. LEXIS 182413 (E.D.N.Y. Aug. 30, 2023) .................... 6-7, 10

*City of New York v. Smokes-Spirits.com, Inc.*,
    541 F.3d 425 (2d Cir. 2008) ............................................................................. 6

*Clement v. Am. Honda Fin. Corp.*,
    176 F.R.D. 15 (D. Conn. 1997) ........................................................................ 34

*CMG Holdings Grp. v. Wagner*,
    No, 15-5814, 2016 U.S. Dist. LEXIS 121135 (S.D.N.Y. Sep. 7, 2016) ............................. 15

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ........................................................................... 19

*Cohn v. Mass Mut. Life Ins. Co.*,
    189 F.R.D. 209 (D. Conn. 1999) ...................................................................... 33

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................................. 10

*Cont'l Cas. Co. v. Marshall Granger & Co., LLP*,
    No. 11-3979, 2017 U.S. Dist. LEXIS 70756 (S.D.N.Y. May 9, 2017) ................................ 5

*Corsello v. Verizon New York, Inc.*,
    967 N.E.2d 1177 (N.Y. 2012) ......................................................................... 31

*Cruz v. Fxdirectdealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) ........................................................................... 13

*Daly v. Glanbia Performance Nutrition, Inc.*,
    No. 23-933, 2023 U.S. Dist. LEXIS 154202 (N.D. Ill. Aug. 31, 2023) .............................. 34

*Davito v. AmTrust Bank*,
    743 F. Supp. 2d 114 (E.D.N.Y. 2010) ................................................................. 32

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) ........................................................................... 23

*Delgado v. Ocwen Loan Servicing, LLC*,
    No. 13-4427, 2014 U.S. Dist. LEXIS 135758 (E.D.N.Y. Sep. 23, 2014) ........................... 15

*Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*,
    929 A.2d 932 (Md. 2007) .............................................................................. 28

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018) ......................................................................... 7

*Edmar Fin. Co., LLC v. Currenex, Inc.*,
  No. 21-6598, 2023 U.S. Dist. LEXIS 87620 (S.D.N.Y. May 18, 2023) ............................. 10

*Elsevier Inc. v. W.H.P.R., Inc.*,
  692 F. Supp. 2d 297 (S.D.N.Y. 2010) ................................................................. 21

*Empire Blue Cross & Blue Shield v. Tsoi*,
  No. 95-7058, 1998 U.S. Dist. LEXIS 4340 (S.D.N.Y. Apr. 2, 1998) ................................. 18

*F3Ea Funding, LLC v. Rapid Realty Franchise LLC*,
  No. 18-01734, 2019 U.S. Dist. LEXIS 243118 (E.D.N.Y. June 18, 2019) ........................... 12

*Flexborrow LLC v. TD Auto Fin. LLC*,
  255 F. Supp. 3d 406 (E.D.N.Y. 2017) ................................................................. 18

*Fresh Meadow Food Servs., LLC v. RB 175 Corp.*,
  282 F. App'x 94 (2d Cir. 2008) ...................................................................... 22

*Gabara v. Facebook, Inc.*,
  484 F. Supp. 3d 118 (S.D.N.Y. 2020) ................................................................. 5

*Gen. Tel. Co. of Sw. v. Flacon*,
  457 U.S. 147 (1982) ................................................................................. 32

*GICC Capital Corp. v. Technology Finance Group, Inc.*,
  67 F.3d 463 (2d Cir. 1995) .......................................................................... 23

*Gov't Emples. Ins. Co. v. Landow*,
  No. 21-1440, 2022 U.S. Dist. LEXIS 57715 (E.D.N.Y. Mar. 29, 2022) .............................. 6

*Grace Int'l Assembly of God v. Festa*,
  797 F. App'x 603 (2d Cir. 2019) ..................................................................... 23

*Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*,
  No. 15-3748, 2016 U.S. Dist. LEXIS 104251 (S.D.N.Y. Aug. 4, 2016) .............................. 7

*H. J. Inc. v. Nw. Bell Tel. Co.*,
  492 U.S. 229 (1989) ............................................................................ 22, 23

*Hines v. Overstock.com, Inc.*,
  No. 09-991, 2013 U.S. Dist. LEXIS 117141 (E.D.N.Y. Aug. 19, 2013) ............................. 29

*Hemmerdinger Corp. v. Ruocco*,
  No. 12-2650, 2016 U.S. Dist. LEXIS 128074 (E.D.N.Y. Sep. 19, 2016) ............................ 21

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ........................................................................ 34

*In re Auto. Parts Antitrust Litig.*,
   50 F. Supp. 3d 869 (E.D. Mich. 2014) .................................................... 30, 31

*In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*,
   No. 13-150, 2015 U.S. Dist. LEXIS 133484 (S.D.N.Y. Sep. 30, 2015) ......................... 33, 35

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .................................................... 25

*In re ClassicStar Mare Lease Litig.*,
   727 F.3d 473 (6th Cir. 2013) .......................................................... 12

*In re Dig. Music Antitrust Litig.*,
   321 F.R.D. 64 (S.D.N.Y. 2017) ......................................................... 34

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ........................................................ 34

*In re Sumitomo Copper Litig.*,
   104 F. Supp. 2d 314 (S.D.N.Y. 2000) ................................................. 9, 13, 19

*In re Sumitomo Copper Litig.*,
   995 F. Supp. 451 (S.D.N.Y. 1998) ...................................................... 14

*In re Trilegiant Corp.*,
   11 F. Supp. 3d 82 (D. Conn. 2014) ..................................................... 8

*King v. Wang*,
   No. 14-7694, 2021 U.S. Dist. LEXIS 218243 (S.D.N.Y. Nov. 9, 2021) ..................... 23

*Langan v. Johnson & Johnson Consumer Cos.*,
   897 F.3d 88 (2d Cir. 2018) ............................................................ 25

*Lee v. Can. Goose US, Inc.*,
   No. 20-9809, 2021 U.S. Dist. LEXIS 121084 (S.D.N.Y. June 29, 2021) ................... 29

*Lewis Tree Serv. v. Lucent Techs., Inc.*,
   211 F.R.D. 228 (S.D.N.Y. 2002) ........................................................ 34

*Local 875 I.B.T. Pension Fund v. Pollack*,
   992 F. Supp. 545 (E.D.N.Y. 1998) .................................................... 9, 19

*Love Grace, Inc. v. Santos*,
   No. 19-4029, 2020 U.S. Dist. LEXIS 207412 (E.D.N.Y. Nov. 5, 2020) ................... 6

*MacNaughton v. Young Living Essential Oils, LC*,
   67 F.4th 89 (2d Cir. 2023) .......................................................... 27, 30

*Makarian v. Conn. Life Ins. Co.*,
   202 F.R.D. 60 (D. Mass. 2001) ......................................................... 33

*Mandarin Trading Ltd. v Wildenstein*,
   16 N.Y.3d 173 (2011) ................................................................ 30

*Marshall v. Verde Energy USA, Inc.*,
   No. 18-1344, 2019 WL 1254562 (D.N.J. Mar. 19, 2019) ..................... 31

*McCracken v. Best Buy Stores*,
   248 F.R.D. 162 (S.D.N.Y. 2008) ................................................... 33

*Mednick v. Precor, Inc.*,
   No. 14-3624, 2016 U.S. Dist. LEXIS 75582 (N.D. Ill. June 10, 2016) ........ 34

*Moore v. PaineWebber, Inc.*,
   306 F.3d 1247 (2d Cir. 2002) ...................................................... 33

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................ 10

*Naprstek v. Ditech Fin. LLC*,
   No. 18-11442, 2022 U.S. Dist. LEXIS 127633 (D.N.J. July 19, 2022) ........ 28

*Ozbakir v. Scotti*,
   764 F. Supp. 2d 556 (W.D.N.Y. 2011) ............................................ 18

*O'Malley v. Adams*,
   No. 21-0381, 2023 Ill. App. LEXIS 320 (Ill. App. 5th Sept. 11, 2023) ......... 31

*Pacenza v. IBM Corp.*,
   No. 04-5831, 2007 U.S. Dist. LEXIS 118380 (S.D.N.Y. July 26, 2007) ......... 6

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...................................................... 34

*Protter v. Nathan's Famous Sys.*,
   904 F. Supp. 101 (E.D.N.Y. 1995) ............................................ 16, 21

*Ramirez-Marin v. JD Classic Builders Corp.*,
   No. 16-5584, 2017 U.S. Dist. LEXIS 161769 (E.D.N.Y. Sept. 30, 2017) ........ 31

*Rivera v. Leb. Sch. Dist.*,
   No. 11-147, 2012 U.S. Dist. LEXIS 165410 (M.D. Pa. Nov. 20, 2012) ......... 30

*Rotimi Azu Owoh v. PHH Mortg. Servs.*,
   No. 21-320, 2021 U.S. Dist. LEXIS 145868 (D.N.J. Aug. 4, 2021) ............. 28

*Route v. Mead Johnson Nutrition Co.*,
   No. 12-7350, 2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013) ......... 34

*Schwartzco Enters. Ltd. Liab. Co. v. TMH Mgmt., Ltd. Liab. Co.*,
   60 F. Supp. 3d 331 (E.D.N.Y. 2014) ............................................ 27

*Securitron Magnalock Corp. v. Schnabolk,*
   65 F.3d 256 (2d Cir. 1995) ................................................................ 12

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC,*
   No. 15-6549, 2018 U.S. Dist. LEXIS 220574 (S.D.N.Y. Dec. 26, 2018) ............ 26

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis United States Llp,*
   No. 08-0179, 2012 U.S. Dist. LEXIS 138790 (E.D.N.Y. Sep. 17, 2012) ............ 29

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
   293 F.R.D. 287 (E.D.N.Y. 2013) ........................................................ 33

*Silva v. Hornell Brewing Co.,*
   No. 20-756, 2020 U.S. Dist. LEXIS 142900 (E.D.N.Y. Aug. 10, 2020) ......... 26, 30, 34

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149, 134 S. Ct. 2334 (2014) ................................................... 35

*Town of Islip v. Datre,*
   245 F. Supp. 3d 397 (E.D.N.Y. 2017) ................................................... 19

*U1IT4Less, Inc. v. FedEx Corp.,*
   871 F.3d 199 (2d Cir. 2017) .............................................................. 13

*United States v. Int'l Longshoremen's Ass'n,*
   518 F. Supp. 2d 422 (E.D.N.Y. 2007) ................................................... 10

*Wanaque Borough Sewerage Auth. v. Twp. of W. Milford,*
   677 A.2d 747 (N.J. 1996) ................................................................. 30

*Wang v. Telsa Inc.,*
   338 F.R.D. 428 (E.D.N.Y. 2021) ........................................................ 35

**Statutes**

6 Del. C. § 2513 ............................................................................. 25, 28

6 Del. C. § 2525 ............................................................................. 26

18 U.S.C. § 1964 ............................................................................ 24

73 P.S. § 201-2 .............................................................................. 25

73 P.S. § 201-3 .............................................................................. 25

73 P.S. § 201-9.2 ........................................................................... 26

815 Ill. Comp. Stat. Ann. 505/2 .......................................................... 25, 26

D.C. Code § 28-3904 ....................................................................... 25

D.C. Code § 28-3905 ....................................................................... 26

Mass. Ann. Laws ch. 93A, § 2 ............................................................. 25

Mass. Ann. Laws ch. 93A, § 9 ............................................................. 26, 28

Md. Code Ann., Com. Law § 13-301 ........................................................................... 25

Md. Code Ann., Com. Law § 13-302 ........................................................................... 26

Md. Code Ann., Com. Law § 13-303 ........................................................................... 25

Md. Code Ann., Com. Law § 13-104 ........................................................................... 28

N.J. Stat. Ann. § 56:8-2 ............................................................................................... 25

N.J. Stat. Ann. § 56:8-19 ............................................................................................. 26

N.J.A.C. § 14:4-2.3 ...................................................................................................... 33

N.Y. Gen. Bus. Law § 349 .............................................................................. 25, 26, 27

N.Y. Gen. Bus. Law § 349-d .................................................................................. 25, 26

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 27

Fed. R. Civ. P. 9 ................................................................................................... *passim*

Fed. R. Civ. P. 12 ........................................................................................................ 32

Fed. R. Civ. P. 23 ........................................................................................................ 25

**Other**

*Restat. 2d of Torts*, § 531 ............................................................................................. 29

*Restat. 2d of Torts*, § 532 ............................................................................................. 29

*Restat. 2d of Torts*, § 533 ............................................................................................. 29

Plaintiff Uriel Morales respectfully submits this Memorandum of Law in Opposition to Defendants' (collectively, "Defendants" or "Palmco Entities") Motion to Dismiss Plaintiff's Complaint and Alternative Motion to Strike.

## INTRODUCTION

For years, Defendants have profited off unsuspecting consumers by slamming them, *i.e.*, switching their electric and gas supplier without their knowledge or authorization. Plaintiff is just one of those many consumers. This case seeks to prevent Defendants, a series of entities doing business as "Indra Energy," from fraudulently causing utility companies to switch more customers to their energy or gas services without consent.[1]

Following energy deregulation, independent energy supply companies ("ESCOs") like Defendants entered the market to compete with utilities to supply electricity or natural gas to consumers. The utility provides the default supply service unless a consumer chooses an ESCO. Unlike the regulated utility, ESCOs can set their own supply rate. This market incentivizes ESCOs, such as Defendants, to encourage as many consumers as possible to switch, as this directly correlates with higher profits for ESCOs. It also incentives bad actors like Defendants to obtain customers by fraud and deceit.

To combat slamming, nearly every state has virtually identical safeguards to ensure that consumers switch to ESCOs voluntarily. These statutory safeguards include requiring that ESCOs must obtain a consumer's utility number for the switch and secure the consumer's affirmative consent and authorization, which is provided in writing, electronically, and by phone recording.

---

[1] While Defendants operate under different names in different states, they all share the same officers and employees, the same primary place of business, and they are all formed, owned, and operated by Mr. Palmese.

Once an ESCO receives affirmative consent and authorization, it sends the local utility a change order (also known as a switch or enrollment order) by mail or the wires, who switches the consumer's energy supplier to the ESCO.  The change order identifies the consumer as having affirmatively authorized the switch from the utility to the ESCO.  But ESCOs do not have to submit proof of authorization; instead, they only have to maintain that proof in their own records. Slamming only requires an ESCO to submit a false change order after obtaining a name and a utility account number from unsuspecting consumers.  Slamming is thus an unchecked scourge in the industry.

Defendants are repeat offenders; at least four state regulatory authorities have levied significant sanctions against Defendants for slamming.  In the states where Defendants operate, the public service commissions have received hundreds of complaints of slamming over the years.[2] Once Palmco Energy NJ fraudulently signed up Plaintiff, it charged him a low introductory teaser rate the first month, and then it charged ever-increasing rates that were far greater than the utility.

Plaintiff brings this case on behalf of all consumers who were charged excessive rates after they were slammed by Defendants.  Fortunately, regulators in every state in which Defendants do business require that energy companies like Defendants maintain records showing, for all customers, affirmative proof that they agreed to switch energy providers.  Identifying Defendants' "customers" who did not consent to switching to Indra Energy is a simple matter of comparing Defendants' customer list with corresponding electronic records of valid affirmative consents.

Plaintiff's claims are straightforward and present a paradigmatic case for class treatment. Yet rather than remedy its conduct, Defendants seek to avoid all accountability with their 12(b)(6)

---

[2] Plaintiff filed FOIA requests in each state in which Defendants operate.  Plaintiff received copies of complaints about Defendants' slamming practices from each of the states that responded to those requests.

motion and the alternative motion to strike class claims.  Defendants' motions should both be denied.

First, Plaintiff has sufficiently alleged civil RICO claims under Sections 1964(c) and (d).  Plaintiff adequately pleads the four elements of a RICO claim, *i.e.*, that Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  The Defendants form the RICO enterprise.  They all act in a coordinated manner, as they share employees, a corporate headquarters, and one trade name, Indra Energy.  Plaintiff also alleges that all Defendants retained third party sales agents to further their plan to engage in unlawful slamming behavior.  The enterprise is not just RICO defendants, as each of the Palmco Entities engaged in an otherwise lawful business of supplying electricity or natural gas, and is thus distinct from the enterprise.

Defendants wrongly contend that Plaintiff's RICO claims must satisfy the heightened pleading standard of Rule 9(b).  The Second Circuit has recognized that Rule 9(b) is inapplicable when mails and wires are sent in furtherance of fraudulent scheme.  *See Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145-46 (S.D.N.Y. 2014).  As Plaintiff has alleged that Defendants used interstate wires to send fraudulent change orders to utilities, he need not plead with specificity that all of the communications themselves contained false or misleading information.  Defendants' knowledge and intent to slam customers can be inferred from the hundreds of instances of slamming alleged in the Complaint and the numerous governmental sanctions.  Nonetheless, Plaintiff has plead hundreds of separate incidences of mail and wire fraud committed by Defendants, and he did so with more than ample specificity under Rule 9(b).

Plaintiff also adequately pleads both "open-ended" continuity and "close-ended" continuity.  Defendants' unlawful scheme to slam customers has continued since at least 2016,

despite numerous government investigations and complaints to the public service commissions. Discovery will likely uncover many more defrauded customers.

Second, Defendants wrongly contend that the Complaint fails to adequately plead a state law claim. The 215-page Complaint comprehensively details Defendants' unlawful conduct. Specifically, the Complaint explains how Defendants continually slammed customers over numerous years, submitted fraudulent change orders to utilities across numerous states using wires and mail, and caused numerous customers to significantly overpay Defendants for electricity or gas. Defendants violated the nearly identical consumer protection statutes of New Jersey, New York, Delaware, Maryland, Massachusetts, Pennsylvania, Illinois, and Washington D.C.

Furthermore, Plaintiff alleges that Defendants were unjustly enriched at the expense of the Plaintiff and Class Members, as Defendants charged rates far greater than the utility. This is in violation of the nearly identical unjust enrichment claims available in New Jersey, New York, Delaware, Maryland, Massachusetts, Pennsylvania, Illinois, and Washington D.C. Defendants attack Plaintiff's state consumer protection and unjust enrichment claims on highly technical grounds, but they fail to show any pleading deficiencies.

Third, Defendants fail to make any persuasive argument as to why the Court should strike Plaintiff's class claims (which it should not). Common issues predominate and the class is easily ascertainable -- if a customer has been changed to Indra Energy and Defendants lack a valid record of assent, that customer has been slammed and is a class member. The injunctive relief class can (and should) be certified, as there is a substantial risk that Defendants will slam Plaintiff and other class members again, given their nearly decade long scheme and practice of obtaining customers through slamming.

Notably, Defendants attempt to circumvent the Court's October 11, 2023 Order, which rejected their request to file a 45-page brief, by including their substantive arguments in footnotes

4

and ten pages of attached appendices.  *See* Defs. Mem. at 29-30 nn.14-24; Apps. A-E.  The Court should either disregard Footnotes 14-24 and Appendices A through E, or grant Plaintiff leave to file additional papers responding to Defendants' arguments.

Plaintiff respectfully requests that the Court deny the motions.

## DEFENDANTS ARE ATTEMPTING TO EVADE PAGE LIMITS

Defendants attempt to circumvent the Court's October 11, 2023 Order, which rejected their request to file a 45-page brief, by including their substantive legal and factual arguments in footnotes and attached appendices.  *See* Defs. Mem. at 29-30 nn.14-24; Apps. A-E; Order, Oct. 11, 2023.  The Court ordered Defendants to file its motion to dismiss and alternate motion to strike as one motion (*see* Order, Sept. 21, 2023) with a brief no longer than 35-pages.  *See* Order, Oct. 11, 2023.[3]  While Defendants filed a 35-page brief, they also attached five appendices that, collectively, are ten pages long.  *See* Apps. A-E.  These appendices violate the Court's 35-page limit.  *See Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 2017 U.S. Dist. LEXIS 70756, at *23 n.6 (S.D.N.Y. May 9, 2017) (appendix submitted with brief constitute violations of page limits).

Defendants clearly use Appendices A-E and Footnotes 14-24 to evade the Court's page limits.  For instance, in the body of the brief, Defendants make mostly conclusory arguments regarding whether Plaintiff adequately plead his state law claims (which he did).  *See* Defs. Mem. at 29-30.  The substantive support for those arguments is improperly found in Appendices B-E and Footnotes 14-24.  *See Gabara v. Facebook, Inc.*, 484 F. Supp. 3d 118, 126 (S.D.N.Y. 2020) (explaining that the plaintiff's attached appendix exceeded the page limits for his brief while arguing against the defendant's assertions, which the plaintiff failed to meaningfully address in his brief).  Accordingly, the Court should strike or ignore Appendices A-E and Footnotes 14-24.  *See*

---

[3] *See also* Order, Sept. 19, 2023 (ordering the parties to file briefs no longer than 35 pages).

*Pacenza v. IBM Corp.*, 2007 U.S. Dist. LEXIS 118380, at *3 (S.D.N.Y. July 26, 2007) (striking a lengthy exhibit that contained "the type of factual and legal analysis that is proper to include in a [brief]"). Otherwise, the Court should grant leave to file additional papers responding to Defendants' arguments in Footnotes 14-24 and Appendices A-E.

## ARGUMENT

## I.  LEGAL STANDARD.

A complaint can only be dismissed when it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gov't Emples. Ins. Co. v. Landow*, 2022 U.S. Dist. LEXIS 57715, at *10-11 (E.D.N.Y. Mar. 29, 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff need only "provide 'enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality.'" *Love Grace, Inc. v. Santos*, 2020 U.S. Dist. LEXIS 207412, at *7-8 (E.D.N.Y. Nov. 5, 2020) (internal citation omitted).

## II.  PLAINTIFF HAS ALLEGED CIVIL RICO
## CLAIMS UNDER SECTIONS 1964(c) AND 1964(d).

"A plaintiff bringing a RICO claim must [] establish four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Allstate Ins. Co. v. Ahmed Halima*, 2009 U.S. Dist. LEXIS 22443, at *12 (E.D.N.Y. Mar. 19, 2009) (Irizarry, J.) (denying motion to dismiss) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439 (2d Cir. 2008)).

### A.  Plaintiff Has Alleged A RICO Enterprise.

An association-in-fact RICO enterprise "is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" *City of N.Y. v. Old Dominion Tobacco Co., Inc.*, 2023 U.S. Dist. LEXIS 182413, at *22-23 (E.D.N.Y. Aug. 30, 2023) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)). "The members of the enterprise must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such

6

purposes." *Id*. at *23 (citation omitted). "To establish a relationship among those associated with the enterprise, the plaintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme." *Id*. (citation omitted).

### 1.    The Named Defendants Form A RICO Enterprise.

The Complaint adequately alleges a RICO enterprise. When arguing to the contrary, Defendants erroneously focus on third party sales companies referenced in the Complaint. Defs. Mem. at 10-13. This demonstrates an inherent misunderstanding of the nature of Plaintiff's RICO claims. Although these third party sales companies -- who are not named defendants -- participated in the enterprise, they are not necessary to establish a RICO enterprise.

Defendants assert that, as alleged, the named Defendants form a suspect rimless "hub and spoke" formation. *Id*. at 12-13. Not true. A rimless hub and spoke formation occurs "when each defendant is alleged to have a relationship with a central figure, but the defendants are not all alleged to be connected in some overarching way." *D'Addario v. D'Addario*, 901 F.3d 80, 101 (2d Cir. 2018). Defendants suggest that Mr. Palmese is the "hub" and the Palmco Entities are the unconnected "spokes." But the Palmco Entities could not be more connected. They share common management, common officers, common personnel, and a common headquarters. Compl. ¶¶ 14-15. These entities are anything but unconnected spokes.

Further, despite Defendants suggestion to the contrary, Plaintiff does not have to show that other enterprise participants were necessary for a single participant to perform an act in furtherance of the enterprise. Defs. Mem. at 14. Defendants rely on *Gucci*, but there, "[t]he Merchant Defendants all operate from China and happen to sell counterfeit goods bearing Plaintiffs' Marks. But there is no indication that the Merchant Defendants, 'located in different parts of the country, came to an agreement to act together -- or even how they knew each other.'" *Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, 2016 U.S. Dist. LEXIS 104251, at *25 (S.D.N.Y. Aug. 4, 2016)

7

(citation omitted).[4]  Here, the Palmco Entities are operated by the same personnel, out of the exact same office, and were clearly aware of one another.  It would be a fiction to suggest that when such personnel perform an act to obtain a customer for one Palmco Entity, they somehow are acting wholly independent of the other Palmco Entities.

Nor does a RICO enterprise require the detailed form and structure that Defendants suggest.  As the Supreme Court has held:

> We see no basis in the language of RICO for the structural requirements that petitioner asks us to recognize.  As we said in *Turkette*, an association-in-fact enterprise is simply a continuing unit that functions with a common purpose.  Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods--by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.  While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.  Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

*Boyle*, 556 U.S. at 948.

Defendants also assert that Plaintiff does not allege that each Defendant participates in the operation or management of the enterprise.  Defs. Mem. at 14-15.  That is incorrect.  The Complaint makes clear that "[e]ach Palmco Defendant conducts activities in furtherance of this enterprise within its own territory."  Compl. ¶ 21.  The Palmco Entities are limited liability companies organized under the laws of different states and are each licensed to operate in a single state.  *Id*. ¶¶ 42-56.  Their roles within the enterprise are further differentiated because, while there

---

[4] Similarly, in *In re Trilegiant Corp*., 11 F. Supp. 3d 82, 99 (D. Conn. 2014), the plaintiffs alleged a series of commercial relationships between a hub commercial group and e-merchants with whom the hub did business, but there was no allegation that the e-merchants were even aware of one another.

are two Palmco Entities licensed in each applicable state, in each state one entity operates in the electricity segment and the other operates in the natural gas segment. *Id*. ¶¶ 21, 22, 92, 110, 165, 201, 267, 281, 295, 309, 321, 333, 345, 357, 539, 592, 1770. Each has a unique role within the Enterprise, managing the affairs within its own territory and market segment. Thus, they act in a coordinated manner, but within their own individual lanes.[5] Indeed, it is the Palmco Entities' distinct corporate structures and licensures that allow each to operate within their territories on behalf of the Enterprise. Compl. ¶¶ 22, 92.

Further, to the extent the Palmco Entities utilized third party sales companies, those sales companies operated as agents of the Palmco Entities and the sales companies' actions are imputed to the Palmco Entities. *See In re Sumitomo Copper Litig*., 104 F. Supp. 2d 314, 325 (S.D.N.Y. 2000) ("'RICO liability may be imputed to a corporation where an agent acts on behalf of a corporate entity with that entity's knowledge.'") (quoting *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 568 (E.D.N.Y. 1998)).[6]

## 2.   **The Third Party Sales Companies Participated In The Enterprise.**

While a RICO enterprise exists with or without the third party sales companies, they shared a common purpose with the named Defendants. The Complaint alleges the third party sales companies were retained as agents of Defendants to further the goals of the enterprise -- to use unlawful means to sign up as many customers as they could. Compl. ¶¶ 20, 22. Indeed, Plaintiff

---

[5] This is distinct from the cases cited by Defendants. In *Blue Cross v. Smithkline Beecham Clinical Labs., Inc*., 108 F. Supp. 2d 84, 99 (D. Conn. 1999), there was no coordination among enterprise members where it was alleged that the defendant medical lab controlled an enterprise consisting of numerous innocent doctors' offices and medical facilities who were victims of the enterprise and whose patients were over-billed by the lab.

[6] The Complaint does not allege that the Palmco Entities obtained customers exclusively through these sales companies. The extent of the sales companies' role will be determined through the discovery process.

alleges that these third party sales companies, on behalf of, and in conspiracy with, the named Defendants, "have salespersons go door to door where they obtain consumers' information (such as their names, addresses, and utility information)."  Compl. ¶ 22.  Further, the sales companies are incentivized to engage in this unlawful conduct to profit from their relationships with the Palmco Entities.  After all, salespersons profit from increased sales.

Allegations that the third party sales companies who are in privity with the Palmco entities engaged in such fraudulent conduct for the benefit of the enterprise (and were enriched for such conduct) demonstrates a knowing participation in an unlawful scheme pertaining to obtaining customers for the Palmco Entities.  This is sufficient to demonstrate that they shared a common purpose to obtain customers through unlawful means.  *See, e.g.*, *Edmar Fin. Co., LLC v. Currenex, Inc.*, 2023 U.S. Dist. LEXIS 87620, at *11 (S.D.N.Y. May 18, 2023) (operator of foreign exchange trading platform and large trading firms in privity with the exchange operator adequately alleged to have a common purpose of secretly steering business away from plaintiffs to the trading companies, resulting in illicit trading profits for the trading companies and higher fees for the exchange platform operator*); Old Dominion Tobacco Co., Inc*., 2023 U.S. Dist. LEXIS 182413, at *23 (finding an enterprise consisting of wholesalers, retailers, and traffickers of untaxed cigarettes engaged in a common purpose to sell and profit from illegal cigarettes).  This also shows that these third party sales companies are not disconnected "spokes."  They were clearly involved in unlawful activity at the heart of the alleged enterprise.[7]   Moreover, while Defendants attempt

---

[7] Cases cited by Defendants to the contrary are inapposite.  In *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 299-300 (E.D.N.Y. 2017), the plaintiff alleged a vast conspiracy among scores of financial services companies based on nothing more than the fact that they had done business with the defendant.  In *Conte v. Newsday, Inc*., 703 F. Supp. 2d 126, 135 (E.D.N.Y. 2010), the plaintiff alleged the involvement of third parties that did business with the defendant, but did not allege how the activities of these third parties related to the alleged scheme.  In *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475-76 (E.D.N.Y. 2007), the government alleged

to distance themselves from the sales companies, Defendants have continuously used these sales companies over several years, resulting in countless complaints from customers, and multiple government investigations. Despite what should have been constant "red flags," Defendants continued to retain the sales companies as their agents. This provides a further inference that Defendants and the sales companies were in league with one another and shared a common purpose. Moreover, the full extent of the involvement of the third party sales companies in the enterprise, and the extent to which their activities are controlled by Defendants, will be fleshed out over the course of discovery.

### 3. The Alleged Enterprise Is Distinct From The Palmco Entities.

There is overlap between the persons participating in the RICO enterprise and the alleged RICO persons. But that does not render the enterprise and the RICO persons indistinct. "In fact, it is permissible for the defendants both to 'collectively constitute the enterprise' and to also be separately liable under RICO for their roles in operating it." *Black v. Ganieva*, 2022 U.S. Dist. LEXIS 116255, at *43 (S.D.N.Y. June 30, 2022) (citation omitted).

Here the enterprise is not the RICO persons, themselves, but a common scheme to obtain customers (and related profit) through unlawful means. Compl. ¶¶ 21, 79, 91. Each Palmco Entity is engaged in the otherwise legitimate business of supplying electricity or natural gas and is, thus, distinct from the enterprise. Compl. ¶¶ 22, 92, 108, 163, 199, 265, 279, 293, 307, 319, 331, 343, 355, 537, 590, 1768. These allegations are sufficient to demonstrate an association-in-fact

---

an amorphous, non-specific conspiracy of countless persons, entities, and officials located in or near various ports in the United States without explanation of how this enterprise worked or how its members participated. In *Chiropractic v. Encompass Ins. Co. of Am.*, 2013 U.S. Dist. LEXIS 43972, at *36-38 (N.D. Ill. Mar. 28, 2013), the plaintiff alleged a conspiracy between a software company whose products were used by insurance companies that allegedly utilized the software in preparing fraudulent documents; but there was no allegation regarding how the software company participated in the scheme, other than through the licensing of software.

enterprise. *See, e.g.*, *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 263 (2d Cir. 1995) (an association-in-fact consisting of two separate and distinct corporations and a person who was an officer or agent of both corporations constitutes an enterprise); *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 166 (2001) ("[W]e hold simply that the need for two distinct entities is satisfied; hence, the RICO provision before us applies when a corporate employee unlawfully conducts the affairs of the corporation of which he is the sole owner -- whether he conducts those affairs within the scope, or beyond the scope, of corporate authority.").

Defendants rely on *F3Ea Funding, LLC v. Rapid Realty Franchise LLC*, 2019 U.S. Dist. LEXIS 243118 (E.D.N.Y. June 18, 2019), but that case makes clear that a "RICO enterprise may be composed of corporate entities that are themselves RICO persons, so long as the corporate entities associate with each other to create an enterprise that is sufficiently distinct from the entities individually." *F3Ea Funding*, 2019 U.S. Dist. LEXIS 243118, at *8-9. "'[C]orporate defendants are distinct from RICO enterprises when they are functionally separate, as when they perform different roles within the enterprise or use their separate legal incorporation to facilitate racketeering activity.'" *Id*. (quoting *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013)). Here, each Palmco Entity performs a different function by operating in a different state and selling a different product and each uses their separate legal incorporation to facilitate slamming on behalf of the Enterprise. Those functions are only possible through separate incorporation in different states and licensure in different states.[8]

In *Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo*, 346 F. Supp. 3d 432, 454 (S.D.N.Y. 2018), the court rejected the argument that, "because all of the members of the

---

[8] In *F3Ea Funding*, the only reason RICO claims were dismissed was because, unlike the present case, there, the plaintiff did "not allege that the scheme was in any way furthered by the legal separateness of the Entity Defendants." *Id*. at *10.

association-in-fact enterprise are also named as RICO Defendants, it cannot be distinct." The court held that was "a fundamental misunderstanding of the distinctness requirement. . . . [where] [t]he case law is clear that the same entity cannot be both the person *and* the enterprise, but that is simply not the same as saying that the defendants cannot collectively constitute the enterprise." *Id*. (internal citation omitted) (emphasis in the original). "Indeed, the distinctness cases are not necessarily concerned with complete overlap of RICO persons and RICO enterprises. Rather, the core question is whether the RICO enterprise is distinct from each of the RICO persons, in which case it satisfies the distinctness requirement." *Id*. Here, the enterprise consists of RICO persons working together to unlawfully obtain customers, which is distinct from Palmco entities that otherwise are engaged in lawful business activities. Compl. ¶¶ 108, 163, 199, 265, 279, 291, 307, 319, 331, 343, 355, 537, 590, 1767.[9]

Moreover, Defendants argue that the inclusion of the third party sales companies cannot satisfy the distinctiveness requirement because the Palmco Entities were just dealing with the sales companies "in the ordinary course of business." Defs. Mem. at 18 n.6. However, when an agent such as a sales company engages in unlawful activity for the benefit of its principal, it is not doing so in ordinary course of business. Regardless, whether this conduct constitutes an ordinary course of business involves issues of fact that cannot resolved on a motion to dismiss. *See In re Sumitomo Copper Litig*., 104 F. Supp. 2d at 325 ("RICO liability may be imputed to a corporation where an agent acts on behalf of a corporate entity with that entity's knowledge.").

_____

[9] Defendants cite *U1IT4Less, Inc. v. FedEx Corp.*, 871 F.3d 199, 206-08 (2d Cir. 2017). There, the court merely held that the fact that entities related to another entity that allegedly committed fraudulent conduct were, themselves, separately incorporated, was insufficient to allege an enterprise involving those related entities where nothing suggested that those entities were engaged in any overarching fraudulent scheme. *Cruz v. Fxdirectdealer, LLC*, 720 F.3d 115, 121 (2d Cir. 2013) is also distinguishable, because it involved allegations "that a corporation has violated the statute by conducting an enterprise that consists of itself plus all or some of its officers or employees." Here the RICO persons participating in the enterprise are separate corporate entities.

**B.**     **Plaintiff Adequately Alleges A Pattern Of Racketeering Activity.**

    **1.**     **Rule 9(b) Is Inapplicable Where Mails
And Wires Are Sent In Furtherance Of A
Fraudulent Scheme, But Do No Contain Any False Statements.**

Defendants argue that Plaintiff's allegations of predicate acts are insufficient because they do not satisfy Rule 9(b). Defs. Mem. at 19-20. They are wrong. Rule 9(b) provides that, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." However, "courts in the Second Circuit have applied a different standard in cases where '[a] plaintiff claims that . . . mails or wires were simply used in furtherance of a master plan to defraud,' but does not allege that "the communications [themselves] . . . contained false or misleading information."' *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 145-46 (S.D.N.Y. 2014) *(quoting In re Sumitomo Copper Litig*., 995 F. Supp. 451, 456 (S.D.N.Y. 1998)) (ellipses in the original). "[T]he rationale for this approach is twofold: one, mailings made only in furtherance of a scheme are not technically allegations of fraud within the meaning of Rule 9(b); and two, the very purpose of applying Rule 9(b) to mailings in furtherance of the scheme is obviated where a plaintiff alleges the wider scheme with the requisite particularity." *Id*. at 146. *See also AIU Ins. Co.*, 2005 U.S. Dist. LEXIS 29666, at *34 (E.D.N.Y. Feb. 22, 2005) ("[I]n cases in which the mail was used simply used in furtherance of a master plan to defraud, the mailings need not contain fraudulent information, and a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).").

Here Plaintiff alleges that, in furtherance of their fraudulent scheme: information about amounts that customers are to be charged are sent by Defendants via interstate wires to utilities (it is the utilities that send bills to customers regardless of provider); energy bills are mailed to Defendant's customers; and utilities remit payments from customers to Defendants via interstate

wire.  *See, e.g.*, Compl. ¶¶ 118-23.  All of these mailings and wires are made in furtherance of the scheme to sign up customers without their approval and to obtain revenue from these customers. However, none contain false information.  Therefore, these acts of mail and wire fraud do not have to be pled with particularity.  Moreover, every use of the mail or interstate wires in furtherance of the same overarching scheme constitutes a separate predicate act.  *See Delgado v. Ocwen Loan Servicing, LLC*,  2014 U.S. Dist. LEXIS 135758, at *56-58 (E.D.N.Y. Sep. 23, 2014).

With respect to change orders that are sent to utilities via interstate wires, they merely direct the utility to switch a customer from the utility to a Palmco Entity.  There is no false information in the change order.  Nevertheless, the use of such change orders is misleading because a utility would presume that the customer had authorized the change, otherwise such a change order would not be permitted.  To the extent such a communication must be alleged with particularity, the Complaint does so.  The Complaint alleges: a specific Palmco Entity sent a change order to a specific utility; the substance of the change order, which was a direction that the utility switch a specified customer; the approximate dates of the change orders (the exact dates are exclusively in the possession of the Defendants); that the change order was sent without authorization of the customer; and the change order was sent for the purpose of defrauding the customer and the utility and enriching the Palmco Entity and the enterprise.  *See, e.g.*, Compl. ¶¶ 118-27.

With regard to the other alleged predicate acts of mail and wire fraud discussed above other than the change orders, even if Plaintiff was required to plead such acts of mail and wire fraud with particularity, all specific information regarding the who, what, where, when, and how of thousands of mailings and wires are exclusively in the possession of Defendants.  Under such circumstances, courts are more lenient with respect to pleading requirements.  *See, e.g.*, *CMG Holdings Grp. v. Wagner*, 2016 U.S. Dist. LEXIS 121135, at *14-15 (S.D.N.Y. Sep. 7, 2016) ("In certain circumstances, courts are permitted to apply 'some leniency when confronted with the

strictures of Rule 9(b),' such as 'when the facts are peculiarly within the knowledge of the defendants.'") (citation omitted); *Protter v. Nathan's Famous Sys.*, 904 F. Supp. 101, 106 (E.D.N.Y. 1995) ("An exception to this rule exists where the facts at issue are 'peculiarly within the opposing party's knowledge, in which event the allegations must be accompanied by a statement of facts upon which the belief is based.'") (citation omitted). Moreover, to the extent Rule 9(b) applies, "it should not be applied in a manner which would, in effect, obstruct all plaintiffs, including those with valid claims, from initiating civil RICO actions." *AIU Ins. Co. v. Olmecs Med. Supply, Inc*., 2005 U.S. Dist. LEXIS 29666, at *33 (citation omitted).

Nevertheless, Plaintiff has alleged many instances of mail and wire fraud with specificity. As an example, the Complaint alleges that Plaintiff never spoke with Palmco Energy NJ or any salesperson before he was switched from Elizabethtown Gas to Palmco Energy NJ. Compl. ¶ 115. Yet in September 2022 (the precise date is within Defendants' exclusive knowledge), Palmco Energy NJ sent a change order via interstate wires to Elizabethtown Gas directing that Plaintiff's service provider be switched to Palmco Energy NJ, something that may not be done without authorization. *Id*. ¶ 118. The unauthorized nature of the transaction is further demonstrated by the fact that Palmco Energy NJ has been unable to provide any documentation of Plaintiff's authorization, which it is required to do under New Jersey law. *Id*. ¶¶ 132-37. Moreover, less than four hours after receiving a demand for such documentation from Plaintiff's counsel, counsel received an offer of $543, on the condition that Plaintiff execute a settlement agreement. *Id*. ¶¶ 133-36. At the pleadings stage, these facts provide a further inference that Palmco Energy NJ knowingly switched Plaintiff without authorization. Further, each month from about September 2022 to January 2023, Palmco Energy NJ transmitted to Elizabethtown Gas, via interstate wires, the amount that Plaintiff was to be charged; Elizabethtown Gas then sent a bill through the mail to Plaintiff; Plaintiff paid his bills; and Elizabethtown Gas transferred the proceeds to Palmco Energy

16

NJ via interstate wires. *Id*. ¶¶ 121-26. Each such act constitutes a separate predicate act of mail or wire fraud. Further, by slamming Plaintiff, Palmco Energy NJ was able to charge him exorbitant prices that, in some months, were more than *triple* the amount Elizabethtown Gas would have charged, demonstrating further motive on the part of Palmco Energy NJ. *Id*. ¶¶ 139-43. As a result of this conduct, Plaintiff and Elizabethtown Gas (which lost a customer) were both defrauded.

As another example, in May 2012 (the precise date is within Defendants' exclusive possession), Palmco Power NJ submitted a change order to switch the service of Pamela Fletcher without her authorization. *Id*. ¶ 168. It was later discovered that Palmco Power NJ's purported authorization contained a forged signature, demonstrating an intentional fraudulent act. *Id*. ¶ 172. Like Plaintiff, every month after Palmco Power NJ slammed her: Palmco Power NJ would send her utility, via interstate wires, the amount Ms. Fletcher was to be charged; the utility would send a bill through the mail; Ms. Fletcher would pay the bill; and the proceeds would be transmitted from the utility to Palmco Power NJ via interstate wires. *Id*. ¶¶ 176-79. A similar thing happened to Ms. Bonita Cusate-Moya when both Palmco Power NJ and Palmco Energy NJ fraudulent switched her in or about April 2012. *Id.* ¶¶ 144-54, 180-90.

## 2.    The Complaint Alleges Facts From Which Defendant's Knowledge And Intent Can Be Inferred.

To the extent applicable, Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Complaint alleges that customers have been intentionally tricked, lied to, or signed up without their approval. Compl, ¶¶ 118-1773. Yet, Defendants argue that nothing in the Complaint suggests that they had knowledge of this activity. Defs. Mem. at 7. The Complaint alleges countless complaints by customers and numerous government investigations of Defendants regarding the same type of conduct over many years. *See* Compl. ¶ 24 ("Since 2016, at least four state Attorneys General have conducted

investigations of Defendants regarding slamming and other egregious customer enrollment tactics, resulting in substantial settlements."); *id.* ¶¶ 79-85 (discussing investigations in detail, including consent judgments, settlements, and findings of public utility commissions).8F These facts provide an inference that the Defendants had knowledge that customers were being signed up without their consent. Moreover, these complaints and investigations have persisted for several years and still continue. Yet, Defendants have not reigned in such activity.[10]

For the same reasons, the Complaint also alleges facts providing an inference of Defendants' intent. Indeed, hundreds of customers have come forward to complain about being signed up by Defendants without their permission. Findings of state attorneys general or public service commissions address the large numbers of Defendants' customers that were signed up without permission. One or two improper retentions of customers might indicate innocent error, but hundreds indicate that this is an intentional course of conduct. *See, e.g.*, *Empire Blue Cross & Blue Shield v. Tsoi*, 1998 U.S. Dist. LEXIS 4340, at *12 (S.D.N.Y. Apr. 2, 1998) (multiple submissions of erroneous documents were sufficient to raise an issue of fact regarding defendant's intent).[11]

---

[10] Defendants' citation to *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 565 (W.D.N.Y. 2011) does not help them. There, the complaint alleged "in broad, nonspecific terms, only that [defendants] 'marketed the Premises to the Plaintiffs both orally and in writing' as a sound investment," without allegations of a coordinated fraudulent scheme with other alleged enterprise members.

[11] Defendants cite *Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 424 (E.D.N.Y. 2017) as holding that the "assertion defendant 'must have' known based on number of 'fraudulent transactions' [is] insufficient." Def. Mem. at 23. There, automobile dealers were alleged to have defrauded plaintiffs who cosigned their vehicles. *Id.* at 411-12. However, the defendant whose intent was in question merely provided general financing to the automobile dealers and other than a long-standing business relationship between the defendant and the dealers, there was nothing to suggest that this defendant had knowledge of the alleged fraud or any fraudulent intent. *Id.* at 412, 223-24. Nor was that defendant in any privity with the plaintiffs. *Id.* In contrast, here, hundreds of instances of customers being signed up without their permission raised in complaints and investigations suggest knowledge and intent of the party in direct privity with the customers.

Moreover, at the pleadings stage, scienter is demonstrated through alleged facts that "give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or *a reckless disregard for the truth*." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (emphasis added). Even if Defendants somehow did not have actual knowledge, given the mountain of complaints and numerous governmental investigations, they must have had a reckless disregard for the truth.

Defendants also discuss a supposed lack of detail in allegations regarding interactions between the third party sales companies and the named Defendants. However, details of the involvement of these non-parties are exclusively in the possession of Defendants and these agents. Nevertheless, acts of agents (the third party sales companies) can be imputed to their principals (Defendants). *See In re Sumitomo Copper Litig.*, 104 F. Supp. 2d at 325 ("'RICO liability may be imputed to a corporation where an agent acts on behalf of a corporate entity with that entity's knowledge.'") (quoting *Local 875 I.B.T. Pension Fund v. Pollack*, 992 F. Supp. 545, 568 (E.D.N.Y. 1998)).

Additionally, Defendants raise factual arguments about whether the alleged scheme was a sound one likely to be successful. Defendants ask why they "would risk their business to partake in the alleged scheme." Defs. Mem. At 23. That is a question of fact. Given the number of investigations Defendants have weathered over the years, it appears that Defendants felt any risks were worth the rewards. Compl. ¶¶ 24 & n.1, 81-89. Moreover, even if there was merit to these

---

Similarly, Defendants cite *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 414-15 (E.D.N.Y. 2017), but there the defendants whose intent was at issue were merely alleged to have "a business relationship with other companies that were allegedly engaged in criminal conduct." Defendants also cite *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Pla*n, 2009 U.S. Dist. LEXIS 28880, at *19 (E.D.N.Y. Mar. 31, 2009), but there, unlike here, nothing in the complaint suggested fraudulent intent other than a generalized desire to profit.

19

arguments, the RICO statute does not provide a carve-out for criminals who may not have fully considered the potential consequences of their actions.[12]

### 3.   All Of The Palmco Entities Are Proper Defendants.

Defendants assert some Palmco Entities are not alleged to have received any complaints. Defs. Mem. at 20.  They are incorrect to the extent this argument pertains to Palmco Power DE and Palmco Energy DE.  *See* Compl. ¶¶ 285-89, 300-03.  With respect to other Palmco entities that are not alleged to have received complaints, discovery will show either complaints against these entities, or the switching of their customers without authorization.  Moreover, this Court can draw the reasonable inference that the Palmco Entities for whom Plaintiff has not yet identified customer complaints likewise engaged in fraudulent conduct because they are run by Mr. Palmese and the same Indra Energy personnel.[13]

### 4.   Mr. Palmese Oversaw The Enterprise.

Mr. Palmese controls all the Palmco Entities and directs the RICO enterprise.  Given that most information regarding Defendants' scheme is in their exclusive possession and control,  what Plaintiff alleges about Mr. Palmese's involvement is sufficient to survive a motion to dismiss.  The Complaint alleges that: he controls the Palmco Entities; he is an officer, owner, member, director, and/or manager of each Palmco Entity; he organized each Palmco Entity; "the same individuals under the direction and control of Robert Palmese make marketing, enrollment, and pricing

---

[12] While Defendants raise the factual possibility that Plaintiff may have a received a notice of the change of energy provider, Plaintiff explicitly alleges that he did not receive any notice.  *See* Complaint ¶ 116.

[13] Indeed, days before the filing of this memorandum of law, Plaintiff's counsel was notified by the Maryland Public Service Commission that it would shortly be receiving between 63 and 124 consumer complaints, spanning from 2018 to 2023, alleging that Defendants slammed them.

decisions for each of the Palmco Defendants;" and "Mr. Palmese exercises control and authority over all aspects of the Palmco Defendants' activities."  Compl. ¶¶ 12, 14, 15, 17, 21.

With respect to the enterprise, "Mr. Palmese is involved in each predicate act committed by the Palmco Defendants because he controls them and directs the affairs of the Enterprise through his control of the Palmco Defendants"; and "[i]n his position, Mr. Palmese necessarily knows of the broad conduct of Palmco Defendants with respect to the switching of customers without their authorization." *Id*. ¶¶ 98-99.  Given his control over the Palmco entities, "[i]t would be impossible for Mr. Palmese not be well-aware of this racketeering activity and such a vast amount of racketeering activity must be done with Mr. Palmese approval and direction." *Id*. ¶ 101.

Where someone is in such a control position of entities participating in a RICO enterprise, it can reasonably be inferred that there is "knowledge and agreement to facilitate the affairs of a RICO enterprise."  *Hemmerdinger Corp. v. Ruocco*, 2016 U.S. Dist. LEXIS 128074, at *11 (E.D.N.Y. Sep. 19, 2016) ("From this evidence, which showed Defendant Ruocco as the controlling shareholder of Recycle Technology, the jury could properly infer Defendant Ruocco's knowledge and agreement to facilitate the affairs of a RICO enterprise.").  To that end, a "specific connection need not necessarily be made between the fraudulent representations and the specific defendants where the defendants are insiders."  *Protter*, 904 F. Supp. at 106.[14]

### 5. Plaintiff Has Alleged Continuity.

#### a. Open-Ended Continuity.

"Open-ended" continuity entails proving the threat of long-term criminal conduct. "[O]pen-ended continuity may inhere in racketeering acts themselves, as in a gangster's demand

---

[14] Authorities cited by Defendants are inapposite.  In *Elsevier Inc. v. W.H.P.R., Inc*., 692 F. Supp. 2d 297, 308 (S.D.N.Y. 2010), there was nothing connecting the owner of an entity with respect to the alleged fraudulent scheme where, unlike here, there was no allegation that the owner caused the entity to do anything in relation to this scheme.

for regular 'protection' money, or in the fact that the acts are part of an ongoing entity's regular course of business." *Fresh Meadow Food Servs., LLC v. RB 175 Corp*., 282 F. App'x 94, 99 (2d Cir. 2008) (vacating dismissal of RICO claims based on a lack of open-ended continuity). "[O]pen-ended continuity 'is likewise satisfied where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business . . . , or of conducting or participating in an ongoing and legitimate RICO enterprise.'" *Id*. (quoting *H. J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 243 (1989)).

Here, Defendant's scheme to unlawfully enroll customers has been ongoing for many years, as demonstrated by countless customer complaints and multiple government investigations. Yet, this conduct continues to this very day. Indeed, Plaintiff was slammed just months before the filing of this action. Compl. ¶ 114. He was fraudulently billed for a service he did not authorize until his discovery of the switch earlier this year. *Id*. ¶¶ 124-25, 128. Numerous other customers were switched, were fraudulently billed, or complained of being switched without authorization in 2023. *Id*. ¶¶ 526, 531-32, 631, 895, 905, 915, 924, 933, 937, 943, 1185, 1194, 1203, 1212, 1221, 1230, 1239, 1248, 1258, 1267, 1276, 1285, 1721, 1727, 1734, 1741, 1748, 1754. This scheme is clearly part of an ongoing means by which Defendants operate an otherwise legitimate business.

Additionally, open-ended continuity is applicable in all types of RICO cases, and not just those involving organized crime. *See, e.g.*, *Fresh Meadow Food Servs,* 282 F. App'x at 99-100 (civil action involving claims that that property owner knowing leased contaminated property). Defendants argue that open-ended continuity is only applicable when the enterprise engaged in inherently unlawful conduct. Defs. Mem. at 25. However, the very authorities Defendants cite state otherwise. In *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019), the Second Circuit made clear that "there are two ways to show open-ended continuity (1) where the acts of the defendant or  the enterprise are inherently unlawful, such as murder or obstruction

22

of justice, and are in pursuit of inherently unlawful goals, such as narcotics trafficking or embezzlement, or (2) *where the enterprise primarily conducts a legitimate business* but there is some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." (citations and alterations omitted) (emphasis added).

### b.    Closed-Ended Continuity.

"To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'" *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001) (quoting *H. J.*, 492 U.S. at 242) (upholding jury verdict in favor of plaintiffs on RICO claims). "To establish closed-ended continuity, 'a plaintiff must provide some basis for a court to conclude that defendants' activities were 'neither isolated or sporadic.'" *Id.* (quoting *GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995)).

Defendants argue (without citation to any authority) that continuity is not established for Palmco Energy NJ and Palmco Power NJ because the only alleged conduct that occurred within the statute of limitations period or class period (2017 to the present) was multiple predicate acts committed regarding Plaintiff, but not other customers. Defs. Mem. at 26. However, continuity is not determined by looking solely at predicate acts committed within the statute of limitations or within a class period. *See, e.g.*, *King v. Wang*, 2021 U.S. Dist. LEXIS 218243, at *9 (S.D.N.Y. Nov. 9, 2021) ("RICO cases frequently plead and rely on evidence of racketeering acts that are outside the limitations period, so long as the pattern of racketeering activity continued within the limitations period."). Moreover, Defendants are incorrect about the alleged facts. Defendants acknowledge that other predicate acts were alleged to have occurred before 2017 with respect to customers Bonita Cusate-Moya and Pamela Fletcher. Defs. Mem. at 26 n.12. However, predicate acts committed against Ms. Fletcher continued into 2018. *See* Compl. ¶¶ 170-73.

23

Additionally, Defendants note that the Complaint -- without the benefit of discovery -- only alleges eight customers that Palmco Power MA unlawfully switched and five customers that Palmco Energy DC unlawfully switched. Defs. Mem. at 26. Without citation to any authority, Defendants assert that this is insufficient to establish continuity. *Id*. The Complaint actually alleges dozens of predicate acts with respect to those customers. Compl. ¶¶ 207-62, 546-587. Discovery is likely to uncover many more defrauded customers. Moreover, Defendants miss the point that the Defendants engaged in such conduct as a collective enterprise. Given the fact that the Palmco Entities, as a whole, are alleged -- without the benefit of discovery -- to have unlawfully switched over more than 345 customers, the fact that -- without the benefit of discovery -- Plaintiff can only identify eight or five such customers of particular Palmco Entities should be of no moment.

Finally, Defendants question the accuracy of allegations regarding certain customers. Defs. Mem. at 26-27. However, such questions merely raise issues of fact that cannot be resolved on a motion to dismiss. The complaints render Plaintiff's claims plausible.

### C. Plaintiff Has Adequately Alleged A RICO Conspiracy Under 18 U.S.C. § 1964(d).

Because Plaintiff has adequately alleged a claim under 18 U.S.C. § 1964(c), he has also alleged a claim under 18 U.S.C. § 1964(d). *See Allstate Ins. Co. v. Ahmed Halima*, 2009 U.S. Dist. LEXIS 22443, at *20-21 (E.D.N.Y. Mar. 19, 2009) ("[S]ince the court finds that Plaintiffs properly pled a civil RICO claim under § 1964(c), the [] Defendants' argument that Plaintiffs' RICO conspiracy claim must fail as well is denied as moot.") (Irizarry, J.)

## III.    THE COURT SHOULD NOT DISMISS PLAINTIFF'S STATE LAW CLAIMS

### A.    Plaintiff Can Represent A Multi-State Class.

Defendants' contention that Plaintiff lacks standing to represent consumers outside of New Jersey is flatly precluded by *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 92-93 (2d Cir. 2018).  There, the Second Circuit clarified that the issue is not one of standing but predominance under Rule 23.  *Id.* at 92-93 ("[A]s long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3) . . . not a question of 'adjudicatory competence' under Article III.") (internal citations omitted); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 701 F. Supp. 2d 356, 376-77 (E.D.N.Y. 2010) (denying a motion to dismiss claims brought under the laws of other states and stating that the defendant should not conflate standing issues with class certification issues).  Notably, the cases Defendants cite on this issue predate *Langan*.

### B.    Plaintiff Adequately Plead Consumer Protection Claims.

Defendants' conclusory arguments with respect to Plaintiff's consumer protection claims are not persuasive.  First, Defendants contend that Plaintiff failed to plead the elements of the consumer protection claims of the states other than New York.  Defs. Mem. at 28.  Not so.  Each of the eight consumer protection claims simply require that Plaintiff show: 1) that Defendants engaged in consumer oriented conduct;[15] 2) that Defendants' statements and omissions were false

---

[15] *See* N.J. Stat. Ann. § 56:8-2; 6 Del. C § 2513; N.Y. Gen. Bus. Law §§ 349, 349-d; 73 P.S. §§ 201-2(4), 201-3(a); Mass. Ann. Laws ch. 93A, § 2; Md. Code Ann., Com. Law §§ 13-301, 13-303; D.C. Code § 28-3904; 815 Ill. Comp. Stat. Ann. 505/2.

or misleading;[16] and 3) that class members like Plaintiff were injured as a result.[17]  Plaintiff more than sufficiently pleads facts supporting each of these elements.  With respect to Plaintiff's claims, he alleges that Defendant Palmco Energy NJ made false or misleading statements to Plaintiff's utility, Elizabethtown Gas, namely that Defendants had received authorization to enroll as a customer in Defendants' services.  *See* Compl. ¶¶ 118-19, 1827-31.  Plaintiff also alleges that he suffered an ascertainable economic loss as a direct and proximate result of Defendants' actions because he paid Palmco Energy NJ far more than he would have paid had he not been fraudulently switched from his local utility to Indra Energy.  *See id.* ¶¶ 121-30, 1832.  *See, e.g.*, N.J. Stat. Ann. § 56:8-19.

These allegations are more than sufficient, and Defendants' lawyerly argument amounts to an attempt to rewrite long-rejected technical pleading standards.  *See Silva v. Hornell Brewing Co.*, 2020 U.S. Dist. LEXIS 142900, at *11-12 (E.D.N.Y. Aug. 10, 2020) (denying motion to dismiss even though "Plaintiff does not specify the elements of a claim under each [of forty consumer protection] statute[s], nor does he specify how the alleged facts satisfy the criteria of each statute.  But Plaintiff is not required to do so.  Plaintiff is required to plead the facts, not the details of the law.  Here, Silva has made plausible claims that numerous state consumer protection laws have been violated.").  *See also Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, 2018 U.S. Dist. LEXIS 220574, at *96 (S.D.N.Y. Dec. 26, 2018) (same).

Second, Defendants contend that Plaintiff must plead the consumer protection claims with particularity under Rule 9(b) because they sound in fraud.  Defs. Mem. at 28.  But defendant fails

---

[16] *See id.*

[17] *See* N.J. Stat. Ann. § 56:8-19; 6 Del. C § 2525; N.Y. Gen. Bus. Law §§ 349, 349-d; 73 P.S. § 201-9.2; Mass. Ann. Laws ch. 93A, § 9; Md. Code Ann., Com. Law § 13-302; D.C. Code § 28-3905; 815 Ill. Comp. Stat. Ann. 505/2.

to mention that Plaintiff's New York GBL § 349 claim need not be plead with particularity but rather the general Rule 8 standards apply. *Brady v. Anker Innovations Ltd.*, 2020 U.S. Dist. LEXIS 5672, at \*22 (S.D.N.Y. Jan. 13, 2020) ("[C]laims under GBL Sections 349 . . . are not subject to the heightened pleading requirements of Rule 9(b).") (internal quotation omitted).

And to the extent Rule 9(b) applies, Plaintiff meets it. Over nearly 280 pages and 1,655 paragraphs of allegations, Plaintiff explains in great detail which of Defendants' statements were fraudulent, who spoke them, where and when the statements were made, and why they were fraudulent. *See generally* Compl. ¶¶ 118-1773. This is more than sufficient to satisfy Rule 9(b). *See MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 99 (2d Cir. 2023). With respect to Plaintiff's claims, he alleges that Palmco Energy NJ made fraudulent misrepresentations in or about September 2022. *See* Compl. ¶¶ 118-19 (the who and when). Plaintiff alleges that Palmco Energy NJ transmitted a fraudulent change order via interstate wires to Elizabethtown Gas, falsely asserting that the Plaintiff had authorized the switch of his gas supplier. *See id.* (the where and which). Plaintiff alleges it was fraudulent since he never authorized this switch. *See id.* (the why). Plaintiff also provides extensive details that give rise to a strong inference that Defendants either intentionally slammed him and other customers, or at least acted with reckless disregard. *See Schwartzco Enters. Ltd. Liab. Co. v. TMH Mgmt., Ltd. Liab. Co.*, 60 F. Supp. 3d 331, 344 (E.D.N.Y. 2014). This includes the assertion that Defendants have been accused of slamming customers countless times since 2016. *See generally* Compl. ¶¶ 144-1773. Plaintiff alleges that he never consented to switch his gas supplier. *See* Compl. ¶¶ 118-19. Moreover, when Plaintiff's counsel asked for a copy of his contract, Defendants promptly offered to settle without providing a copy of the contract. *See* Compl. ¶¶ 133-36. To date, Defendants still have not produced a copy

of that contract or any proof of authorization.  Thus, Plaintiff has satisfied the heightened pleading standard of Rule 9(b).[18]

Third, Defendants are also wrong about various states' consumer protection laws or their application to this case.  Defs. Mem. at 29; Apps. B-C.  Both Delaware's and Maryland's consumer protection laws exempt only regulated gas suppliers, not ESCOs like Defendants.  *See* 6 Del. C. § 2513(b)(3) (exempting only matters within the Public Service Commission's jurisdiction);[19] Md. Code Ann., Comm. Law § 13-104(2) (exempting only public service companies that are regulated by the Public Service Commission).  Plaintiff is exempt from having to provide the Massachusetts Defendants with a pre-suit demand because they do not maintain a place of business in the commonwealth.  *See* Mass. Ann. Laws ch. 93A, § 9(3); Compl. ¶¶ 48-49.

To the extent needed, Plaintiff does sufficiently plead justifiable reliance.  Plaintiff alleges that Defendants transmitted a fraudulent change order for the purpose of inducing Plaintiff's utility to switch his service to Indra Energy and with the intention that Plaintiff will continue to pay his utility bill, with Indra Energy as his gas supplier.  *See* Compl. ¶¶ 118-25.  In both Maryland and Pennsylvania, one can successfully bring a claim of fraud based on a theory of third-party reliance. *See Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.*, 929 A.2d 932, 945-46 (Md. 2007) (holding that the defendant, who made fraudulent misrepresentations in a document to secure a loan, was liable to both the lenders and the plaintiff, who bought the loan, when the defendant had

---

[18] Defendants cite cases that are inapposite.  In *Rotimi Azu Owoh v. PHH Mortg. Servs.*, 2021 U.S. Dist. LEXIS 145868, at *6-7 (D.N.J. Aug. 4, 2021), the plaintiff failed to allege that the defendant engaged in any fraudulent conduct.  In *Naprstek v. Ditech Fin. LLC*, 2022 U.S. Dist. LEXIS 127633, at *10-11 (D.N.J. July 19, 2022), the plaintiff failed to specify which defendant was responsible for which action.  In contrast, Plaintiff separately alleges the conduct of each Defendant in his complaint.

[19] *See Customer Electric Choice*, Delaware Public Service Commission, https://depsc.delaware.gov/customer-electric-choice/ (explaining that the PSC does not have jurisdiction over ESCOs' matters).

reason to expect that the loan documents would be presented to prospective buyers on the secondary market); *AFSCME v. Cephalon, Inc. (In re Actiq Sales & Mktg. Practices Litig.)*, 790 F. Supp. 2d 313, 328-29 (E.D. Pa. 2011) (holding that plaintiff had standing to bring its consumer protection claims because "Pennsylvania common law construction requiring justifiable reliance does not require first-party reliance").[20]

### C.     <u>Plaintiff Adequately Pleads An Unjust Enrichment Claim.</u>

Defendants argue that Plaintiff must identify the state law under which his unjust enrichment claim arises. But "identification of specific state law is unnecessary at the pleading stage." *See Lee v. Can. Goose US, Inc.*, 2021 U.S. Dist. LEXIS 121084, at *23-24 (S.D.N.Y. June 29, 2021) (citing *Allianz Glob. Inv'rs GMBH v. Bank of Am. Corp.*, 463 F. Supp. 3d 409, 433 n.22 (S.D.N.Y. 2020)).

Older case law cited by defendant is unpersuasive. *See* Defs. Mem. at 29 (citing *Hines v. Overstock.com, Inc.*, 2013 U.S. Dist. LEXIS 117141, at *32-34 (E.D.N.Y. Aug. 19, 2013); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis United States Llp*, 2012 U.S. Dist. LEXIS 138790, at *21-25 (E.D.N.Y. Sep. 17, 2012)). This is an issue that the Court should consider at the certification stage, as it did in a case cited by Defendants: *Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi-Aventis U.S. LLP*, 2012 U.S. Dist. LEXIS 138790, at *3 n.1 (E.D.N.Y. Sept. 17, 2012)).

Each of Defendants' five conclusory arguments, Defs. Mem. at 30, equally lack merit. <u>First</u>, as has been discussed at length above, Plaintiff can assert claims under laws outside of New

---

[20] *See also* Restat. 2d of Torts, § 531 ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation."); *id.* § 532 (stating that fraudulent misrepresentation in a commercial document can result in liability for financial losses incurred by a third party); *id.* § 533.

Jersey. *See* discussion *supra* Section III.A. <u>Second</u>, Plaintiff does not need to specify how the alleged facts satisfy the criteria of each statute. *See Silva*, 2020 U.S. Dist. LEXIS 142900, at *11-12. Regardless, unjust enrichment claims under all eight states' laws simply require that Plaintiff show that: 1) Defendants have received a benefit; 2) from the plaintiff; and 3) Defendants' retention of the benefit is inequitable.[21]  Plaintiff pleads each of these elements.  With respect to Plaintiff's claims, he alleges that he paid money each month, from about September 2022 to January 2023, to Defendants as a direct result of Defendants slamming him. *See* Compl. ¶¶ 118-19, 1860-61. Plaintiff alleges that Defendants charged him a rate far greater than the rate he would have been charged by Elizabethtown Gas, if Defendants had not slammed him. *See* Compl. ¶¶ 139, 141. Plaintiff alleges that it would be unjust and inequitable for Defendants to retain the payments made for excessive energy charges. *See* Compl. ¶ 1862; *Rivera v. Leb. Sch. Dist.*, 2012 U.S. Dist. LEXIS 165410, at *27-28 (M.D. Pa. Nov. 20, 2012) (finding that the defendant was unjustly enriched when it received more money than it was entitled to receive). The same is true for all class members in all states.

<u>Third</u>, to the extent Rule 9(b) applies to Plaintiff's unjust enrichment claims, Plaintiff meets it. Courts have held that a plaintiff's unjust enrichment claim satisfies Rule 9(b) when the plaintiff states with particularity the circumstances constituting fraud or mistake. *See MacNaughton*, 67 F.4th at 99-100. As previously discussed, the Compliant sufficiently explains in great detail which of Defendants' statements were fraudulent, who spoke them, where and when the statements were made, and why they were fraudulent. *See* discussion *supra* Section III.B.

<u>Fourth</u>, Defendants argue that Plaintiff needs to plead the absence of an adequate remedy at law. Defs. Mem. at 30; App. D. Defendants are mistaken. *See In re Auto. Parts Antitrust Litig.*,

---

[21] *See, e.g.*, *Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 677 A.2d 747, 753 (N.J. 1996); *Mandarin Trading Ltd. v Wildenstein*, 16 N.Y.3d 173, 182 (2011).

50 F. Supp. 3d 869, 900 (E.D. Mich. 2014) (disagreeing with the defendant that certain states require a plaintiff to plead the absence of a legal remedy).  Plaintiff's unjust enrichment claims should survive because none of his other claims seek remedies for the same conduct.  None of the states require that Plaintiff must refrain from pleading another adequate remedy at law.  *See* Defs. Mem., App. D.  Furthermore, even if Plaintiff's other claims seek the same remedies for the same conduct, Plaintiff may plead unjust enrichment in the alternative.  *See, e.g.*, *Marshall v. Verde Energy USA, Inc.*, 2019 U.S. Dist. LEXIS 44687, at \*18-19 (D.N.J. Mar. 19, 2019) (recognizing that unjust enrichment can be an independent cause of action); *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (same).

Fifth, Defendants contend that there are no free-standing unjust enrichment claims under New Jersey, New York, or Illinois law.  Defs. Mem. at 30; App. E.  Not so.  *See O'Malley v. Adams*, 2023 Ill. App. LEXIS 320, at \*31 (Ill. App. 5th Sept. 11, 2023) (nothing that Illinois's "supreme court has recognized unjust enrichment as an independent cause of action); *Marshall*, 2019 U.S. Dist. LEXIS 44687, at \*18-19; *Corsello*, 967 N.E.2d at 1185.

## IV.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE.

It is well settled that motions to strike class claims before plaintiffs are given the opportunity to develop them through discovery are heavily disfavored in the Second Circuit.  *See Ramirez-Marin v. JD Classic Builders Corp.*, 2017 U.S. Dist. LEXIS 161769, at \*12-13 (E.D.N.Y. Sept. 30, 2017) (Irizarry, J.) ("[C]ourts are reluctant to strike class allegations at the pleading stage before discovery has occurred that would permit the plaintiff to develop his class allegations . . . striking Plaintiff's state law claim at this juncture would be inappropriate in light of the lack of discovery and the fact that no motion for class certification has been made yet."); *see also e.g.*, *Candelaria v. Conopco, Inc.*, 2023 U.S. Dist. LEXIS 33180, at \*15 (E.D.N.Y. Feb. 28, 2023) ("[Motions to strike] are 'disfavored' because they seek to 'preemptively terminate' class claims

before discovery that plaintiffs 'would otherwise be entitled [to] on questions relevant to class certification.'") (internal citations omitted); *Carr v. Johnson & Johnson Consumer Inc.*, 2023 U.S. Dist. LEXIS 86691, at *7-15 (E.D.N.Y. May 17, 2023) (Rule 12(f) motions to strike are "rarely successful" as they preemptively terminate class claims before the parties can complete discovery).

The cases Defendants cite in support of their motion are inapposite. *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 115-16 (E.D.N.Y. 2010) dealt with a putative class of plaintiffs who had not yet exhausted their administrative remedies. Meanwhile, *Gen. Tel. Co. of Sw. v. Flacon*, 457 U.S. 147, 160 (1982), ordered a more thorough probe into a plaintiff's adequacy as a class representative. Defendants raise neither issue in this case. Defendants' citation to *Candelaria*, 2023 U.S. Dist. LEXIS 33180, at *15, is curious, as the cited order denied the motion to strike class damages claims. Furthermore, while the court did grant the defendant's motion to strike the injunctive class relief, it did so because the Second Circuit had foreclosed the claim as a matter of law. *See id.* at *16. Defendants make no similar argument here.

The arguments Defendants proffer in support of their proposed motion demonstrate the sagacity of disfavoring premature motions to strike. The face of the Amended Complaint makes clear that Plaintiff's claims are suitable for class treatment and that the putative classes are certifiable because: (1) common claims of fact and law predominate over individual ones; (2) the class is easily ascertainable; and (3) Plaintiff can seek certification of injunctive relief classes.

A.   **Common Claims Predominate.**

Defendants argue that individual issues will predominate because the Court will have to examine the circumstances surrounding each Class member's enrollment with Indra Energy. *See* Defs. Mem. at 31-33. But discovery will show that there is no need to examine any class member's specific interactions with Defendants' agents or the circumstances of their enrollments, as Defendants' own records contain all the proof necessary to determine each customer's class

32

membership.  In every state in which Defendants operate, a retail energy company like Defendants must possess proof that every customer for whom they submit a change order affirmatively consented to change their supplier.  *See e.g.*, N.J.A.C. § 14:4-2.3(b).  To identify customers who were slammed, Plaintiff need only compare Defendants' customer lists to their lists of affirmative valid consents.  Defendants' documents will supply all the necessary proof for identifying class members and assessing Defendants' liability.  If a customer has been changed to Defendants' services and they lack a record of assent, that customer has been slammed and is a class member. No individual analysis of oral or face to face interactions is necessary.  *See Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 306 (E.D.N.Y. 2013) (finding the predominance requirement is satisfied where "individual factual determinations that must be made . . . can be made by reference to records and objective criteria") (internal citation omitted).

As Plaintiff need not perform any analysis of face-to-face interactions, Defendants' cited cases are inapposite.  *See Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002); *McCracken v. Best Buy Stores*, 248 F.R.D. 162 (S.D.N.Y. 2008) (upholding order denying class certification for fraud claims based on oral representations); *Cohn v. Mass Mut. Life Ins. Co.*, 189 F.R.D. 209 (D. Conn. 1999) (denying class certification for fraud claims based on individual misrepresentations); *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2020) (same); *Makarian v. Conn. Life Ins. Co.*, 202 F.R.D. 60 (D. Mass. 2001); *In re Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS 133484, at *11-12 (S.D.N.Y. Sep. 30, 2015) (same).  Plaintiff's claims are based on Defendants' common practice of switching consumers to their energy services without permission and do not require such individualized analysis.

Defendants also argue that variations among Plaintiff's state consumer protection claims preclude certification.  However, Defendants once again fail to show the differences between these

state laws, as is their burden at this stage. *See Silva*, 2020 U.S. Dist. LEXIS 142900, at *11-13. For this reason, Defendants' argument continues to fail and they waive their right to this argument.[22] *See id.*

The cases cited by Defendants are inapposite. In *Daly v. Glanbia Performance Nutrition, Inc.*, 2023 U.S. Dist. LEXIS 154202, at *10-11 (N.D. Ill. Aug. 31, 2023), the court struck nationwide class claims after the defendant offered in-depth analysis of the multiple consumer protection laws and how they differed. Unlike at the motion to dismiss stage, in each of the other cases, the procedural posture of the case was such that the plaintiff had the burden to demonstrate that state law variances did not "present insuperable obstacles." *In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 99 (S.D.N.Y. 2017); *see also In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 142-43 (S.D.N.Y. 2008) (decertifying the settlement class); *Clement v. Am. Honda Fin. Corp.*, 176 F.R.D. 15, 18 (D. Conn. 1997) (same); *Mednick v. Precor, Inc.*, 2016 U.S. Dist. LEXIS 75582, at *1 (N.D. Ill. June 10, 2016) (denying the plaintiff's class certification motion); *Blessing v. Sirius XM Radio Inc.*, 2011 U.S. Dist. LEXIS 32791, at *6 (S.D.N.Y. Mar. 29, 2011) (same); *Lewis Tree Serv. v. Lucent Techs., Inc.*, 211 F.R.D. 228, 230 (S.D.N.Y. 2002) (same). Furthermore, the Court should not consider the out-of-circuit and unpersuasive cases cited by Defendants. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011); *Route v. Mead Johnson Nutrition Co.*, 2013 U.S. Dist. LEXIS 35069 (C.D. Cal. Feb. 21, 2013).

### B.   **The Class Is Easily Ascertainable.**

Defendants' ascertainability argument also fails because Plaintiff need not perform any analysis of face-to-face interactions. *See* Defs. Mem. at 34-35. Class membership may be

---

[22] Furthermore, of course, Plaintiff's RICO claims do not turn on state laws at all.

determined through a simple analysis of records, all of which are in Defendants' possession, no "mini-hearing" is required.

The case Defendants cite in support of their "mini-hearing" argument is inapposite. *See In Avon Anti-Aging Skincare Creams & Prods. Mktg. & Sales Litig.*, 2015 U.S. Dist. LEXIS 133484, at *14-16 (holding a class was not ascertainable where no records of consumer sales existed). Here, Defendants are required by law to keep the records necessary to prove class membership.

### C.     An Injunctive Relief Class Can Be Certified.

By the very nature of slamming, neither Plaintiff nor those class members will know if they are secretly being signed up by one of the Defendants.  All class members live in a home that receives electricity and gas, and they all have utility account numbers that can be stolen by Defendants' trickery.  This is something that Defendants are clearly adept at and have done numerous times.  And it is something some class members have already fallen for multiple times. *See* Compl. ¶¶ 953-54, 57.  As such, there is a substantial risk that the harm will occur again.  *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159, 134 S. Ct. 2334, 2342 (2014) (finding that the threatened enforcement of law creates an Article III injury when it was alleged that petitioner had continually engaged in activity that was threatened with prosecution).  Defendants' cited cases are inapposite.  Once again, Defendants cite *Candelaria*, 2023 U.S. Dist. LEXIS 33180, at *16, in which the court granted the defendant's motion to strike the injunctive class relief because the Second Circuit had foreclosed the claim as a matter of law.  In *Wang v. Telsa Inc.*, 338 F.R.D. 428, 440-41 (E.D.N.Y. 2021), the court held that the class was not ascertainable when its class definition hinges on subjective determinations.  Defendants make no similar arguments here.

### CONCLUSION

Plaintiff respectfully requests that the Court deny Defendants' motions.

Dated: November 16, 2023          Respectfully submitted,

By:    */s/ D. Greg Blankinship*
D. Greg Blankinship
Bradley F. Silverman
Erin Kelley
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
One North Broadway, Suite 900
White Plains, New York 10601
Telephone: (914) 298-3281
gblankinship@fbfglaw.com
bsilverman@fbfglaw.com
ekelley@fbfglaw.com

*Attorneys for Plaintiff and the Proposed Class*